## THE BANK OF NEW YORK, AS TRUSTEE (BS ALT A 2005-9) *v.* SONJA V. BELL ET AL.

Flynn, C. J., and Lavine and Alvord, Js.*

---

\* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued July 8, 2009—officially released May 11, 2010

*Johnathan Bell*, pro se, the petitioner (intervenor).

*Geoffrey K. Milne*, for the respondent (plaintiff).

*J. Hanson Guest*, for the named defendant.

*Opinion*

LAVINE, J. This petition for review, brought pursuant to General Statutes § 51-164x (c)[1] and Practice Book § 77-1,[2] requires us to determine whether the trial court abused its discretion by sealing certain documents in the underlying foreclosure action.[3] The pro se petitioner, Johnathan Bell, alleges in his brief that, by sealing the documents at issue, the court (1) denied him due process by failing to follow the relevant rules of

[1] General Statutes § 51-164x (c) provides in relevant part: "Any person affected by a court order that seals or limits the disclosure of any files, affidavits, documents or other material on file with the court or filed in connection with a court proceeding . . . shall have the right to the review of such order by the filing of a petition for review with the Appellate Court within seventy-two hours from the issuance of such court order."

[2] Practice Book § 77-1 (a) provides in relevant part: "Except as provided in subsection (b), any person affected by a court order . . . that seals or limits the disclosure of . . . documents or other material on file with the court or filed in connection with a court proceeding, may seek review of such order by filing . . . a petition for review with the appellate court within seventy-two hours after the issuance of the order. . . ."

[3] The documents were identified as exhibits 4, 4A and 5 at the hearing on the motion to dismiss the underlying foreclosure action.

practice,[4] and (2) abused its discretion because (a) the respondent, The Bank of New York, as trustee of BS ALT A 2005-9, waived its right to have the documents sealed and (b) the court's factual findings do not support its legal conclusions. We agree that the court abused its discretion when it sealed the documents and therefore vacate the court's order sealing exhibits 4, 4A and 5.

The following procedural history is relevant to our review. On September 6, 2007, the respondent commenced the underlying foreclosure action against the petitioner's wife, Sonja V. Bell (defendant Bell), and Mortgage Electronic Registration Systems, Inc.,[5] with respect to residential property at 54 Main Street, South Glastonbury (Bell residence).[6] On April 18, 2008, the respondent filed a motion for summary judgment[7] as

[4] We decline to review the petitioner's due process claim. Although the record discloses that the subject documents were not lodged pursuant to the rules of practice; see Practice Book §§ 11-20A, 7-4B and 7-4C; we resolve the petitioner's claims on nonconstitutional grounds. "[T]his court has a basic judicial duty to avoid deciding a constitutional issue if a nonconstitutional ground exists that will dispose of the case." (Internal quotation marks omitted.) *State* v. *Washington*, 39 Conn. App. 175, 176–77 n.3, 664 A.2d 1153 (1995).

[5] Neither the defendant Bell nor Mortgage Electronic Registration Systems, Inc., is a party to the petition for review.

[6] The foreclosure complaint alleged in part, that the defendant Bell "did execute and deliver to Mortgage Electronic Registration Systems, Inc. as Nominee for Altara Home Mortgage, LLC, a Mortgage on the Property. Said Mortgage was dated June 17, 2005 and recorded June 23, 2005 in Volume 2205 at Page 298 of the Glastonbury Land Records. Said Mortgage was assigned to The Bank of New York, as Trustee for BS ALT A 2005-9 by virtue of an Assignment of Mortgage to be recorded on the Glastonbury Land Records. The Plaintiff, The Bank of New York, as Trustee for BS ALT A 2005-9, is the holder of said Note and Mortgage."

[7] In its memorandum of law in support of its motion for summary judgment, the respondent stated the following facts, among others. "The [respondent] alleges that the [d]efendant [Bell], on June 17, 2005, executed and delivered a note . . . in favor of Altara Home Mortgage, LLC [Altara] . . . in the original princip[al] amount of $650,000.00. Attached hereto as Exhibit 2 to the affidavit at Exhibit A is a copy of the Note. On the same date, in order to secure the Note, the Defendant executed a Mortgage Deed . . . in favor

to the defendant Bell, which was granted by the court, *Hon. Samuel Freed*, judge trial referee, on May 5, 2008. Judge Freed also granted the respondent's motion for a judgment of strict foreclosure on July 28, 2008. On November 10, 2008, the court, *Hon. Robert Satter*, judge trial referee, reset the law days after the defendant Bell filed a petition in bankruptcy.

On February 13, 2009, the defendant Bell filed a motion to dismiss the foreclosure action, claiming that the respondent had failed to demonstrate authority to pursue the action, as it was not a holder or owner of the subject note at the time the foreclosure action was commenced. The defendant Bell contended that the court lacked subject matter jurisdiction and that the respondent lacked standing. On February 24, 2009, the respondent filed an objection to the motion to dismiss to which it attached documents to demonstrate that it owned the note, including documents that are the subject of the court's sealing order. On April 23, 2009, in a memorandum of decision, Judge Satter determined that it was necessary to hold a hearing to resolve the standing issue. The court vacated the judgment of strict foreclosure, pending the outcome of its hearing on the motion to dismiss.

In the courtroom on the first day of the hearing on the motion to dismiss, May 27, 2009, the respondent filed a motion to seal. The respondent represented that the motion to seal was being filed pursuant to Practice

of Mortgage Electronic Registration Systems, Inc., as Nominee for Altara on property known as 54 Main Street, Glastonbury, CT . . . . Said Mortgage was dated June 17, 2005 and recorded June 23, 2005 in Volume 2205 at Page 298 of the Glastonbury Land Records. A copy of the Mortgage is attached hereto as Exhibit B to the affidavit at Exhibit 2. Mortgage Electronic Registration Systems, Inc. as Nominee for Altara executed an assignment . . . of the Mortgage to the [respondent]. The Assignment was recorded on January 24, 2008, in Volume 2523 at Page 279 of the Glastonbury Land Records. A true and accurate copy of the Assignment is attached hereto as Exhibit C to the affidavit at Exhibit 2."

Book § 7-4B[8] to protect the confidentiality of certain documents that it had obtained to demonstrate that it owned the note. The respondent claimed that some of the documents were confidential in that they (1) include the names and addresses of other borrowers who are indebted to it and (2) contain proprietary business information and " 'bank records' " that are protected by General Statutes § 36a-42 et seq. and 15 U.S.C. § 6801 et seq., the Gramm-Leach-Bliley Financial Modernization Act of 1999 (act). Specifically, the respondent asked the court to seal schedules of loans to the purchase and assumption agreement dated April 7, 2006, amended and restated as of October 1, 2006, schedules of loans owned by the respondent and any schedule of loans that is otherwise part of the documentation offered at the hearing on the defendant Bell's motion to dismiss. The court stated that it would consider the motion to seal after the evidence was admitted.

The hearing was continued over three days, during which the court issued and vacated several orders related to the sealing of the documents. At 12:05 p.m. on June 16, 2009, the court ordered the documents identified as exhibits 4, 4A and 5 sealed, but at approximately 3:20 p.m. it made its order more specific and

---

[8] Practice Book § 7-4B (b) provides in relevant part: "A party filing a motion requesting that a record be filed under seal or that its disclosure be limited shall lodge the record with the court pursuant to Section 7-4C when the motion is filed . . . ."

Practice Book § 7-4C provides in relevant part: "(a) A 'lodged' record is a record that is temporarily placed or deposited with the court but not filed.

"(b) A party who moves to file a record under seal or to limit its disclosure shall put the record in a manila envelope or other appropriate container, seal the envelope or container, and lodge it with the court.

"(c) The party submitting the lodged record must affix to the envelope or container a cover sheet that contains the case caption and docket number, the words 'Conditionally Under Seal,' the name of the party submitting the record and a statement that the enclosed record is subject to a motion to file the record under seal. . . ."

There seems to be no dispute that the respondent failed to lodge the documents at issue pursuant to Practice Book §§ 7-4B and 7-4C.

permitted the defendant Bell, her attorney and the petitioner to have copies of the exhibits, provided that they did not disclose the documents or their contents to others.

The petitioner timely filed an amended petition for review of the court's June 16, 2009 sealing order. This court sua sponte ordered the trial court to articulate the substance of its sealing order. The trial court filed its articulation on June 25, 2009, in which it stated its reasons for sealing exhibits 4, 4A and 5.[9] This court ordered the petitioner and the respondent to appear for argument on the petition for review on July 8, 2009.[10] Following the hearing on the petition for review, this court issued detailed orders regarding briefs to be filed by the petitioner and the respondent.

I

Before we may consider the petitioner's claims, we must address the respondent's claim that this court lacks subject matter jurisdiction over the petition for review. "Whenever a claim of lack of jurisdiction is brought to the court's attention, it must be resolved before the court can proceed." *Gallant* v. *Cavallaro*, 50 Conn. App. 132, 134, 717 A.2d 283, cert. denied, 247 Conn. 936, 722 A.2d 1216 (1998), cert. denied, 528 U.S. 1005, 120 S. Ct. 500, 145 L. Ed. 2d 386 (1999). The respondent contends that the petitioner is not a *person affected* by the court's sealing order; see General Statutes § 51-164x (c); and, therefore, he lacks standing to

[9] The court gave the following reasons for sealing the documents: "Exhibits 4 and 4A reveal total assets conveyed by [JPMorgan] Chase to [the respondent]. They are trade secrets and the necessity to preserve the private interest of the [respondent] overrides the public interest in viewing these materials.

"Exhibit 5 is a list of loans of individuals throughout the country, and the necessity to preserve the privacy interests of these borrowers overrides the public interest in their being revealed to the public."

[10] The proceedings in this court originally were set for July 2, 2009, but had to be continued due to delays in obtaining the transcript of the June 16, 2009 hearing in the trial court.

file a petition for review. Not only is the petitioner a member of the public, which is affected by the court's sealing order, but also he is forbidden to disclose the contents of the documents that the court permitted him to see. We conclude, therefore, that the petitioner is a person affected by the sealing order and that we have jurisdiction to review the petition.[11]

Section 51-164x (c) provides in relevant part: "Any *person affected* by a court order that seals or limits the disclosure of any files, affidavits, documents or other material on file with the court or filed in connection with a court proceeding . . . shall have the right to the review of such order by the filing of a petition for review with the Appellate Court . . . ."[12] (Emphasis added.) See also Practice Book § 77-1 (a). The purpose of § 51-164x (c) is to afford expedited review of a court order that limits disclosure of records to the public. See *Vargas* v. *Doe*, 96 Conn. App. 399, 407, 900 A.2d 525, cert. denied, 280 Conn. 923, 908 A.2d 546 (2006).

[11] On June 15, 2009, the petitioner filed a motion to intervene in the trial court. In his motion to intervene, the petitioner represented that he was "husband, father, and owner and beneficiary of a resulting trust in the property." Subsequent to oral argument in this court, on July 20, 2009, Judge Satter granted the petitioner's motion to intervene.

[12] Our General Statutes do not define affected person as used in § 51-164x (c). Section 51-164x was enacted in 1980; see Public Acts 1980, No. 80-234, § 1. At that time, Senator Alfred Santaniello, Jr., stated, with respect to the public act: "This would allow an appeal process in [seventy-two] hours for any court that was closed to the public via court order to let . . . anyone interested bring that appeal to the court so the court, in the opinion of the court if deemed so, can be reopened to the public." 23 S. Proc., Pt. 8, 1980 Sess., p. 2488.

The current subsection (c) of the statute was enacted in 1997. See Public Acts 1997, No. 97-178, § 1. At that time, Senator Donald E. Williams, Jr., stated: "[T]he bill provides an expedited review process to individuals who are adversely affected by a court order sealing or limiting of disclosure of materials on file with the court.

"That is to say that individuals have the right to petition the Appellate Court for review of a court closure order within seventy-two hours from the issuance of the order." 40 S. Proc., Pt. 7, 1997 Sess., p. 2310.

The respondent contends that the petitioner is not a person affected by the court's sealing order because he was not denied access to the documents at issue, and, therefore, he is not aggrieved. In support of its contention, the respondent relies on law concerning administrative appeals, where classical or statutory aggrievement is a prerequisite to the court's jurisdiction over the subject matter of the appeal. The respondent's construction of § 51-164x (c) is too narrow, and its reliance on administrative law is misplaced, as the principle at issue is not aggrievement but the openness of our courts and the public's access to documents submitted during court proceedings.

"In construing [a statute], we are mindful of General Statutes § 1-2z, which instructs us that [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that [intent and the meaning of a statute] . . . § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *State* v. *Rupar*, 293 Conn. 489, 505–506, 978 A.2d 502 (2009). In this instance, the meaning of the words "person affected" in § 51-164x (c) is not clear and unambiguous.

"Except as otherwise provided by law, there shall be a presumption that documents filed with the court shall be available to the public." Practice Book § 11-20A (a). "The presumption of openness of court proceedings . . . is a fundamental principle of our judicial system. . . . This policy of openness is not to be abridged lightly. In fact, the legislature has provided for very few instances in which it has determined that, as a matter of course, certain privacy concerns outweigh the public's interest in open judicial proceedings." (Citation omitted; internal quotation marks omitted.) *Vargas* v. *Doe*, supra, 96 Conn. App. 406. The right to have documents sealed "is not a right the parties have as against each other; the court must determine the question as against the demands of the public interest." (Internal quotation marks omitted.) Id., 410.

As a rule, documents filed in court are open for public inspection, unless an exception applies. See General Statutes § 51-164x (a) (enumerating as exceptions court sessions conducted pursuant to General Statutes §§ 46b-11, 46b-49, 46b-122 and 54-76h). For matters that do not fall within the statutory exceptions and for which sealing is requested, "the trial court must consider whether a substantial privacy interest exists to override the public's interest in open judicial proceedings." *Vargas* v. *Doe*, supra, 96 Conn. App. 407. "[Practice Book] § 11-20A codifies the common-law presumption of public access to judicial documents, meaning any document filed with the court that the court reasonably could rely on in support of its adjudicatory function." *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 30, 970 A.2d 656, cert. denied sub nom. *Bridgeport Roman Catholic Diocesan Corp.* v. *New York Times Co.*, 558 U.S. 991, 130 S. Ct. 500, 175 L. Ed. 2d 348 (2009) (*Rosado II*). Whether a document is a judicial document is a question of law. Id., 51. In this case, some of the

documents at issue were submitted with the respondent's motion for summary judgment. See part II A of this opinion. Additional documents were attached to the respondent's objection to the defendant Bell's motion to dismiss the foreclosure action. In its objection, the respondent represented that the documents were filed in court to respond to the defendant Bell's motion to dismiss. See part II A of this opinion. Inasmuch as the respondent intended for the court to rely on the documents when it adjudicated the respondent's motion for summary judgment and the defendant Bell's motion to dismiss, the documents were judicial documents. See *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 46. Judicial documents are presumed to be open to the public. The court, however, granted the respondent's motion to seal the documents, which had the effect of denying the public access to those judicial documents. The petitioner, as a member of the public, was denied the presumption of access to judicial documents and is thus a person affected by the court's sealing order.

Moreover, the court's sealing order was granted months after some of the documents had been filed in court. Some of the documents were used to adjudicate the respondent's motion for summary judgment; see waiver discussion in part II A of this opinion; and became the basis of the defendant Bell's motion to dismiss. Additionally, although the court permitted the defendant Bell, her counsel and the petitioner to see the documents, it also ordered them not to disclose the contents of the documents. The defendant Bell's counsel does not represent the petitioner. In a matter in which the petitioner and his family stand to lose their home, the petitioner is not able to convey the documents or their contents to a third party, including, presumably, his counsel or anyone else.

In view of the presumption of the openness of court proceedings and that judicial documents are to be available for public inspection, the petitioner's status as a resident of the Bell residence, the husband of the defendant Bell and the father of the children living at the Bell residence, we conclude that the petitioner has standing to bring the petition for review by this court, and we therefore have jurisdiction. We now turn to the petitioner's claims.

## II

The petitioner claims that the court abused its discretion by sealing exhibits 4 and 4A, the schedule of securitizations acquired by the respondent,[13] and exhibit 5, a list of all borrowers in BS ALT A 2005-9, as (1) the respondent waived any right it may have had to have the court seal the documents and (2) the court misapplied the law to the facts found. We agree that the respondent waived its right to have the court seal the documents and that the court's factual findings do not support its conclusions of law.

We review the sealing orders of the court under the abuse of discretion standard. See *Preston* v. *O'Rourke*, 74 Conn. App. 301, 317, 811 A.2d 753 (2002). "Inherent [therefore] in the concept of judicial discretion is the idea of choice and a determination between competing considerations. . . . A court's discretion must be informed by the policies that the relevant statute is intended to advance. . . . When reviewing a trial court's exercise of the legal discretion vested in it, our review is limited to whether the trial court correctly applied the law and reasonably could have concluded as it did." (Citation omitted; internal quotation marks omitted.) *Vargas* v. *Doe*, supra, 96 Conn. App. 409. When

[13] Exhibit 4A is a lengthy document; exhibit 4 is one page of exhibit 4A and lists BS ALT A 2005-9, which is the identity or name of the mortgage-backed security at issue here.

an issue concerns a question of law, however, our review is plenary. See *Gonzalez* v. *Surgeon*, 284 Conn. 554, 572, 937 A.2d 13 (2007) (whether statute properly interpreted and applied is question of law subject to plenary review).

## A

The petitioner claims that the court abused its discretion by sealing exhibits 4 and 4A because the respondent waived any right it may have had to have the court seal the documents. We agree that the respondent waived any right it had to have the court seal exhibits 4 and 4A.

The following facts are relevant to our resolution of the petitioner's claim. On April 18, 2008, the respondent filed a motion for summary judgment in the foreclosure action. In support of its motion for summary judgment, the respondent included a memorandum of law that referenced a number of attachments, including an officer's certificate from Diane Pickett, vice president of The Bank of New York. The certificate stated in part that "(a) JPMorgan Chase Bank, National Association was appointed Trustee under the Agreement . . . referenced in the Addendum." The certificate listed more than fifty agreements governing certain mortgage trusts in the addendum. The respondent did not assert any privilege with respect to the addendum. Counsel representing the defendant Bell at that time did not file an objection to the motion for summary judgment, and it was granted by Judge Freed.

Thereafter, on February 13, 2009, the defendant Bell filed a motion to dismiss the foreclosure action pro se, claiming lack of subject matter jurisdiction. In her motion to dismiss, the defendant Bell stated, in part: "[The respondent] has filed on the record an Officer's Certificate (Exhibit 1 attached hereto) from which the [respondent] claims [it] has acquired [its] authority as

'holder' of the note. Said Officer's Certificate provides an 'Addendum' which list[s] mortgage pools for which it alleges the [respondent] has authority over. Said 'Addendum' does not list the trust BS ALT A 2005-9. Since the alleged copy of the note [is] not bearer paper as it is endorsed to JPMorgan Chase as Trustee and since the [respondent] has no claim as successor trustee, [the respondent] cannot be a 'Holder' as alleged in its Complaint. Therefore, it has no standing and the court lacks jurisdiction."

The respondent filed an objection to the motion to dismiss on February 24, 2009. In its objection to the motion to dismiss, the respondent acknowledged that, due to an administrative error, the BS ALT A 2005-9 trust was not listed within the abbreviated list submitted as an attachment to the motion for summary judgment. The respondent attached to the memorandum of law in support of its objection, the assignment and assumption agreement and the resignation and assumption agreement between JPMorgan Chase and the respondent. The respondent further stated in its memorandum of law that BS ALT A 2005-9 is "clearly listed on Schedule A to the Assignment and Assumption Agreement attached hereto as Exhibit A." The respondent did not assert any privilege as to the attachments at the time it filed its objection to the motion to dismiss. In his brief in support of his amended petition for review, the petitioner alleged that the respondent waived any right to have the court seal exhibits 4 and 4A. We agree.

This issue is controlled by our Supreme Court's recent decision in *Rosado II*.[14] "[A]lthough the question

[14] *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 884 A.2d 981 (2005) (*Rosado I*), and *Rosado II* concerned the disclosure of "information obtained in twenty-three cases concerning allegations of sexual abuse by Roman Catholic clergy working under the direction of the diocese . . . ." *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 292 Conn. 5. "In 1994, the defendants moved for sealing orders concerning, inter alia, information obtained through deposition testimony and requested that information gained in discovery be restricted from the public. Following a

of whether a privilege has been waived ordinarily presents a question of fact reviewed under a clearly erroneous standard, the standard of review is plenary when the trial court has made its determination on the basis of pleadings and other documents, rather than on live testimony." *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 292 Conn. 57. As in *Rosado II*, the issue of waiver here is predicated on the pleadings and motions and the documents attached thereto, which were filed in the trial court. Our review is therefore plenary. First, we must determine whether the documents at issue are judicial documents; see id., 51; and, if so, then whether the respondent waived any right it may have had to have the documents sealed.

1

The first question to be decided is whether the documents at issue are judicial documents. "[The] supervisory role of the court in relation to its own files is an especially important one insofar as it pertains to files that contain judicial documents—that is, documents that have been submitted to the court for its review in the discharge of the court's adjudicatory function—because [t]he public has a common law presumptive right of access to [such] documents . . . and likely a constitutional one as well. . . . *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, [276 Conn. 168, 216–17, 884 A.2d 981 (2005) (*Rosado I*)]." (Internal quotation marks omitted.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 292 Conn. 43.

hearing, the trial court, *Levin, J.*, found that the defendants' right to a fair trial would be jeopardized by the public disclosure of such information. Accordingly, the trial court concluded that sealing orders were warranted and issued a protective order that provided . . . three restrictions . . . ." Id., 30. "[A]pproximately 12,675 pages of documents were submitted to the court." Id., 32.

"In 2001, the parties settled the twenty-three underlying actions, and the cases were withdrawn. In 2002, the four newspaper publishing companies . . . filed motions as intervenors to obtain access to those documents." Id.

"[T]he common law creates substantive rights of public access to court records. . . . At common law, however, this right never has been absolute, nor has it extended to all documents filed with the court. The public does not have a presumption of access to documents that do not bear directly on the courts' adjudicatory functions." (Citation omitted.) Id., 45. Practice Book § 11-20A "codifies the common-law presumption of public access to judicial documents only." Id., 46. Our Supreme Court has held that "any document filed that a court reasonably may rely on in support of its adjudicatory function is a judicial document." Id. In resolving the issue in *Rosado II*, our Supreme Court concluded, on the basis of its review of the documents at issue, that "all of the nondispositive motions filed in the . . . case, such as motions in limine or sealed discovery motions and their attached exhibits, along with all of the dispositive motions filed in the . . . case, such as summary judgment motions and their attached exhibits, *regardless of whether they were granted or denied*, are judicial documents. . . . [T]he presumption of public access applies to these documents." (Emphasis in original.) Id., 51.

On the basis of our review of the file and the documents at issue in the underlying foreclosure action, we conclude that exhibits 4 and 4A are judicial documents. Exhibits 4 and 4A were attached to the respondent's motion for summary judgment, a motion granted by Judge Freed.[15] Those exhibits were attached to the

---

[15] There was no request to seal and no sealing order issued with respect to the motion for summary judgment. Court files are open to the public, and theoretically members of the public may have examined the documents at issue from the time they were filed until the court entered its sealing order. The court's sealing order does not guarantee that the documents at issue were not previously viewed by the public. "But however confidential it may have been beforehand, subsequent to publication it was confidential no longer. . . . We simply do not have the power, even were we of the mind to use it if we had, to make what has thus become public private again." *Gambale* v. *Deutsche Bank AG*, 377 F.3d 133, 144 (2d Cir. 2004).

respondent's objection to the motion to dismiss. Because those documents were necessary to the court's adjudication of the respective motions, we conclude that the exhibits at issue are judicial documents.

2

We now turn to the question of whether the respondent waived its right to have the court seal exhibits 4 and 4A. We conclude that the respondent waived its rights to have the court seal the documents.

In *Rosado II*, the defendants in that action claimed that certain documents were subject to various statutory and constitutional privileges, "despite the fact that they divulged the documents in question to the plaintiffs in the course of discovery without asserting any privileges at that time . . . ." Id., 55–56.[16] Our Supreme Court agreed with the trial court, *Alander, J.*, that the *Rosado II* defendants had waived any privileges that they may have had with respect to the documents and rejected the defendants' claim "that any waiver that they might have given to the plaintiffs was selective, i.e., to the plaintiffs alone, not to the public generally."[17] Id., 56–57.

"Waiver is the intentional relinquishment or abandonment of a known right or privilege. . . . As a general

---

[16] "After the sealing order had entered, the defendants disclosed numerous documents to the plaintiffs in the course of discovery, some of which were filed later in court. . . . [The court, *Alander, J.*] found that it was undisputed that, when the defendants disclosed the documents in discovery, they had not objected to such disclosure and did not assert, inter alia, the clergyman's or other statutorily or constitutionally protected religious privileges. Because the defendants had failed to assert the privileges at the time of disclosure, the trial court concluded that any privileges that might have applied had been waived." *Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, supra, 292 Conn. 56.

[17] "[T]he defendants had not expressly limited their disclosure to the plaintiffs." *Rosado v. Bridgeport Roman Catholic Diocesan Corp.*, supra, 292 Conn. 57.

rule, both statutory and constitutional rights and privileges may be waived. . . . Waiver is based upon a species of the principle of estoppel and where applicable it will be enforced as the estoppel would be enforced. . . . Estoppel has its roots in equity and stems from the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . . Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Citations omitted; internal quotation marks omitted.) Id., 57–58.

"The conduct of the parties may be used to establish waiver. . . . It is well established that a party that fails to object timely to the introduction of evidence or fails to assert a privilege in connection with disclosed material is deemed to have waived such objection or privilege and may not subsequently resurrect it to protect that material from subsequent disclosure. . . . Similarly, the voluntary disclosure of confidential or privileged material to a third party, such as an adversary, generally constitutes a waiver of privileges with respect to that material. . . . When the disclosure is inadvertent, however, some courts have held that privileges may not have been waived." (Citations omitted; internal quotation marks omitted.) Id., 58–59.

In this matter, the respondent attached the documents to an affidavit in support of its motion for summary judgment. It also attached the documents to its objection to the motion to dismiss. At the time those motions were filed, the respondent did not ask that the attachment, now known as exhibits 4 and 4A, be sealed, nor did it assert any privilege, either common law, statutory or constitutional. The motion to seal the documents attached to the respondent's motion for

summary judgment was filed almost one year after the motion for summary judgment was filed. The motion to seal as to the documents attached to the objection to the motion to dismiss was filed approximately three months after the objection to the motion to dismiss was filed. Moreover, as we concluded in part II A 1 of this opinion, the documents at issue were judicial documents because the respondent intended the court to rely on them when adjudicating the motions. We conclude, on the face of the record, that the respondent's disclosure of the documents was not inadvertent and that the respondent waived any right that it may have had to have the documents sealed.[18]

In this case, the court permitted the documents to be disclosed to the defendant Bell, her counsel and the petitioner but ordered them not to disclose the documents or their contents to others. This order constituted an abuse of the court's discretion. Our Supreme Court has rejected the doctrine of selective waiver. "[T]he [party] cannot be permitted to pick and choose among [its] opponents, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality he has already compromised for his own benefit." (Internal quotation marks omitted.) Id., 60–61, quoting *Permian Corp.* v. *United States*, 665 F.2d 1214, 1221 (D.C. Cir. 1981).[19]

B

The petitioner also claims that the court abused its discretion because its factual findings do not support

___

[18] The rules of practice set out in detail the procedure both the parties and the court must follow when documents are sought to be sealed. See Practice Book §§ 7-4B and 7-4C.

[19] Although we conclude that the respondent waived its right to have the court seal the documents, we address the substantive claims to provide a complete resolution of the claims should there be an appeal to our Supreme Court.

its legal conclusions, specifically, as a result of its findings that (1) exhibits 4 and 4A were trade secrets and (2) the borrowers' privacy interests outweighed the public's right to access. We agree that the evidence does not support the court's findings.

The following facts are relevant to the petitioner's claim. On June 16, 2009, at the hearing on the motion to seal the exhibits, Glenn Mitchell, an employee of The Bank of New York, testified on behalf of the respondent. Mitchell testified that exhibits 4 and 4A are the schedule to the purchase and assumption agreement dated April 7, 2006, but are not a schedule to the pooling and servicing agreement. Information contained on exhibit 4 is available on a case-by-case basis, as investors may call and inquire if the respondent is the trustee for a particular account. In some instances, the names of the transactions undertaken indicate who the clients of the bank are. According to Mitchell, exhibit 4 is competitive information. A competitor of the respondent can see the entire list of business, securitizations and other types of accounts of JPMorgan Chase that the respondent acquired. The court asked Mitchell whether exhibit 4 was a trade secret. Mitchell answered that he "believe[d] so . . . because it would give our competitors information that they could use in the marketplace in competition with us." Mitchell testified that exhibit 5 contains information about individual loans, individual borrowers and mortgages on their homes.

At the conclusion of the hearing, the court ruled orally. It found that exhibits 4 and 4A are a list of pooled assets and that the act specifically requires the disclosure of a proposed or actual securitization, secondary market sale or similar transaction related to the transaction of the consumer. Mitchell "believed" that exhibits 4 and 4A were trade secrets in that they revealed the total assets of the respondent in connection with its transaction with JPMorgan Chase. The

court agreed that the exhibits were trade secrets entitled to confidentiality, and the necessity to preserve the privacy interest of the bank overrides the public's interest in viewing such materials. The court found no reasonable alternative to sealing exhibits 4 and 4A. As to exhibit 5, a list of loans to borrowers throughout the country, the court found that it should be sealed on the ground that any public interest in the list is far outweighed by the necessity of preserving the privacy interest of the individual borrowers.

With regard to a motion to seal, the burden is on the party wanting to seal documents. See *Vargas* v. *Doe,* supra, 96 Conn. App. 410 (burden on defendants to show why they should be permitted to proceed anonymously).

1

We first consider whether the court abused its discretion in sealing exhibits 4 and 4A after finding that they were trade secrets. What constitutes a trade secret is set forth in General Statutes § 35-51 (d), which is part of the Connecticut Uniform Trade Secrets Act, General Statutes § 35-50 et seq. Section 35-51 (d) provides in relevant part that " 'trade secret' means information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

"[T]he party claiming trade secret protection must prove that the information: (1) is of independent economic value; and (2) was the subject of reasonable efforts to maintain its secrecy." *Elm City Cheese Co.*

v. *Federico*, 251 Conn. 59, 78, 752 A.2d 1037 (1999). "The question of whether information sought to be protected by the trade secrets act rises to the level of a trade secret is one of fact for the trial court. . . . [W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citation omitted; internal quotation marks omitted.) Id., 68. Where the primary issue to be determined is "whether there is a trade secret existing which is to be protected"; (internal quotation marks omitted) id., 70; the court must engage in a three step process: (1) identify the information that allegedly constitutes a trade secret; (2) determine whether the information is of the kind "included in the nonexhaustive list contained in the statute"; id.; and (3) decide whether the "information sought to be protected [is] the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Internal quotation marks omitted.) Id., 78.

In this matter, we conclude that there were insufficient facts before the court for it to find that exhibits 4 and 4A were trade secrets. The court itself asked Mitchell if the schedule of securitizations was a trade secret, and he responded that he "believe[d] so . . . ." That answer is a legal conclusion, not evidence of facts on which the court could make the findings necessary to conclude that the documents contain a trade secret. The respondent contends that it is the compilation of the securitizations that is the trade secret, and the documents themselves are the evidence of the trade secret along with Mitchell's testimony. We are not persuaded.

Section 35-51 (d) includes *compilation* in its definition of a trade secret. But to establish that a compilation is a trade secret, there must be some detailed evidence

to demonstrate its economic value, why it is confidential, how the proponent may be harmed by its disclosure and the efforts made to keep it confidential. See, e.g., *Elm City Cheese Co.* v. *Federico*, supra, 251 Conn. 59. In this case, the respondent did not provide a factual basis by which a court could determine the value of the information contained in the compilation and how its disclosure to the public would cause economic or other harm. For example, there is no evidence as to the nature of the information contained in the columns of data in exhibits 4 and 4A, why that information is economically valuable to the respondent and how disclosure of the information could harm the respondent. The respondent failed to present such evidence, and, therefore, the court could make no finding as to the independent economic value of the securitizations on exhibit 4A.

*Elm City Cheese Co.* v. *Federico*, supra, 251 Conn. 59, is the leading case on what constitutes a trade secret, including a compilation. In that case, the defendant Mark Federico, a longtime employee of the plaintiff, Elm City Cheese Company, Inc. (Elm City), was privy to detailed information concerning the cheese-making process and "Elm City's customer list and certain financial information—including its product pricing structure, and list of suppliers and the prices paid for its supplies." Id., 70. The trial court, *Hon. Frank S. Meadow*, judge trial referee, found that Elm City was a family owned and operated business and that "there [was] no evidence that the formula, methods of production, sales to selected customers or other business related information was open to the public, or generally known by other employees [other than Federico]."[20] (Internal quotation marks omitted.) Id., 71. Our Supreme Court agreed with Judge Meadow's conclusion

---

[20] Elm City did not sell its products to the public but to three major customers. *Elm City Cheese Co.* v. *Federico*, supra, 251 Conn. 61.

that the customer list and financial information were a trade secret. Id., 73. The *Elm City Cheese Co.* opinion contains several pages of facts detailing the depth of Federico's knowledge of the financial and production operation of Elm City. Id., 61–64. That sort of detailed evidence as to why exhibits 4 and 4A might be a trade secret is missing from the record in this case. Moreover, because the court found that the act required the respondent to disclose the information, the element of confidentiality in *Elm City Cheese Co.* is missing here. For these reasons, we conclude that the court improperly sealed exhibits 4 and 4A.

2

The court sealed exhibit 5, a schedule of loans that are the assets of BS ALT A 2005-9, after concluding that the borrowers had a privacy interest that outweighed the public's presumptive access to judicial documents. Our review of exhibit 5 discloses that all of the information contained in exhibit 5, while private in the colloquial sense, is available to the public in the land records and, therefore, readily ascertainable wherever the notes and mortgages are recorded. Consequently, the information already is in the public domain, and there was no reason to seal exhibit 5. See also part III A of this opinion. The respondent conceded this point in oral argument before this court but contended that the information contained in exhibit 5 is a compilation of all loans, and the compilation itself is not in the land records. That, however, is not the reason the court sealed exhibit 5. The court sealed exhibit 5 to protect the privacy interests of the individual borrowers, not to protect the compilation from disclosure. The court, therefore, abused its discretion by sealing exhibit 5.

III

The respondent claims that the court properly sealed exhibit 5 because (1) the act prohibits disclosure of the

information in exhibit 5 to nonaffiliated third parties and (2) the banking law of Connecticut, General Statutes § 36a-41 et seq., prohibits the respondent from disclosing the financial records in exhibit 5 except under limited circumstances.[21] We disagree.

## A

We first address the respondent's claim that the act prohibits the disclosure of exhibit 5. Section 6802 (a) of title 15 of the United States Code provides in relevant part: "Except as otherwise provided in this subchapter, a financial institution may not, directly or through any affiliate, disclose to a nonaffiliated third party any nonpublic personal information, unless such financial institution provides or has provided to the consumer a notice . . . ." A " 'financial institution' " is defined under the act as "any institution the business of which is engaging in financial activities as described in section [4 (k) of the Bank Holding Company Act of 1956, 12 U.S.C.S. § 1843 (k)]." 15 U.S.C. § 6809 (3) (A).[22] "Nonpublic personal information" is defined as personally identifiable financial information provided by a consumer to a financial institution, resulting from any transaction with the consumer or any service performed for

---

[21] The respondent also claims that federal public policy, as evidenced by various federal statutes and regulations, and Connecticut common law support the court's entry of a sealing order with respect to exhibit 5. Those claims, however, were not raised in the respondent's motion to seal or in its argument before the trial court, and we therefore decline to review them. "[A] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one . . . ." (Citation omitted; internal quotation marks omitted.) *Ingels* v. *Saldana*, 103 Conn. App. 724, 730, 930 A.2d 774 (2007). "[E]xcept in exceptional circumstances, this court does not review claims that are not raised in the trial court." (Internal quotation marks omitted.) *Wallbeoff* v. *Wallbeoff*, 113 Conn. App. 107, 114, 965 A.2d 571 (2009).

[22] The respondent claims that it is a "financial institution" subject to the provisions of the act. The petitioner has not disputed that assertion. We assume, therefore, for purposes of this opinion, that the respondent is subject to the provisions of the act.

the consumer or otherwise obtained by the financial institution. 15 U.S.C. § 6809 (4) (A). It does not include publicly available information. 15 U.S.C. § 6809 (4) (B).

The term "publicly available information" is defined in the regulations promulgated under the rule-making subtitle of the act. 16 C.F.R. § 313.3 (p) (1). Section 313.3 (p) (1) of title 16 of the Code of Federal Regulations provides: "Publicly available information means any information that you have a reasonable basis to believe is lawfully made available to the general public from: (i) Federal, State, or local government records; (ii) Widely distributed media; or (iii) Disclosures to the general public that are required to be made by Federal, State, or local law." Publicly available information in government records "includes information in government real estate records and security interest filings." 16 C.F.R. § 313.3 (p) (3).

Exhibit 5 is a schedule of loans contained within the BS ALT A 2005-9 trust. The list in that exhibit includes the mortgage loans of the defendant Bell and numerous other borrowers. According to the respondent, the act prohibits the disclosure of exhibit 5 because it contains the names, addresses and the original loan amounts of those borrowers. At oral argument before this court, however, the respondent conceded that that information was available in municipal land records. The respondent's argument that the information in the aggregate format of exhibit 5 is not easily accessible is not persuasive. Although the public records containing the information in exhibit 5 may not be accessed in a single location, the fact remains that the information is available to the public even though it is not compiled in a single document such as exhibit 5. Accordingly, we conclude that the provisions of the act do not apply to the personal information contained in exhibit 5 because that information already is in the public domain.

## B

The respondent next claims that the state's banking law prohibits the disclosure of the financial records of a bank's customers, thereby necessitating the sealing of exhibit 5. Specifically, the respondent argues that the provisions of § 36a-41 et seq. justify the court's sealing order. Section 36a-42 provides in relevant part: "A financial institution may not disclose to any person, except to the customer or the customer's duly authorized agent, any financial records relating to such customer unless the customer has authorized disclosure to such person or the financial records are disclosed in response to . . . (2) a lawful subpoena, summons, warrant or court order . . . ." The respondent claims that exhibit 5 is a "financial record."

The term " '[f]inancial records' " is defined in § 36a-41 (2) as "any original or any copy, whether physically or electronically retained, of: (A) A document granting signature authority over a deposit account or a share account with a financial institution; (B) a statement, ledger card or other record on any deposit account or share account with a financial institution which shows each transaction in or with respect to that account; (C) any check, draft or money order drawn on a financial institution or issued and payable by such an institution; or (D) any item, other than an institutional or periodic charge, made pursuant to any agreement by a financial institution and a customer which constitutes a debit or credit to that person's deposit account or share account with such financial institution if the item is not included in subparagraph (C) of this subdivision." The respondent claims that any mortgage loan in exhibit 5 that contains an escrow account for insurance or taxes would be a "deposit account." According to the respondent, it holds borrowers' funds to pay insurance and taxes on a periodic basis, and its records would therefore contain debit and credit information.

The respondent presented no evidence whatsoever to the court to show that the loans listed in exhibit 5 contained escrow accounts or otherwise qualified as "deposit account[s]" under § 36a-41 (2) (B). Counsel's conclusory statement to the trial court and this court, without more, is insufficient to support the entry of a sealing order on those grounds. Furthermore, the court did not indicate that it was sealing exhibit 5 on the basis of the state's banking law. As its reason for sealing exhibit 5, the court simply stated: "Exhibit 5 is a list of loans of individuals throughout the country, and the necessity to preserve the privacy interests of these borrowers overrides the public interest in their being revealed to the public." The court did not conclude, nor can we, that exhibit 5 was a financial record that could not be disclosed because it was a deposit account under § 36a-41 (2) (B).

Simply put, the court's conclusive statement given as the reason for sealing exhibit 5 is not supported by any articulated factual findings in the record that would demonstrate the existence of a substantial privacy interest that outweighs the public interest in open access to exhibit 5. The respondent submitted no proof from which the court could conclude that either the provisions of the act or the state's banking law preclude the disclosure of exhibit 5 and warrant the entry of a sealing order. On the basis of the record before us, there was insufficient evidence to grant the motion to seal exhibit 5 on either of those two grounds.

The petition for review is granted, and the relief requested therein is granted. The order sealing exhibits 4, 4A and 5 is vacated.

In this opinion ALVORD, J., concurred.

FLYNN, C. J., concurring. I agree with the comprehensive, thoughtful and well reasoned opinion of the majority. I write separately to emphasize that my concurrence

as to the standing of the petitioner, Johnathan Bell, to bring this action, rests on more narrow grounds. The petitioner's standing, although he is not a party to the foreclosure action in which the documents were sealed, rests on the fact that, as a member of the public, he has a right to know, see and access documents filed with the court as part of a summary judgment motion. They are judicial documents; see *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 46, 970 A.2d 656 (2009) ("any document filed that a court reasonably may rely on in support of its adjudicatory function is a judicial document"); and, therefore, they are presumed to be open to the public's inspection. See Practice Book § 11-20A.

In one portion of the majority opinion, the majority states: "In view of the presumption of the openness of court proceedings and that judicial documents are to be available for public inspection, *the petitioner's status as a resident of the subject property, the husband of the defendant [Sonja V. Bell] and the father of the children living there*, we conclude that the petitioner has standing . . . ." (Emphasis added.) The petitioner's right, however, is not dependent in any way on his marriage to the defendant Sonja Bell, his tenancy in the premises being foreclosed, or his being a parent of the children living there. In my opinion, the petitioner's right to know and use these documents and, therefore, his standing to bring this petition is dependent only on his right of access as a member of the general public and not in any way on his spousal relationship or where he and his children live. It is on that basis, that I concur.