# STATE OF CONNECTICUT *v.* JOSHUA KOMISARJEVSKY
## (SC 18797)

Rogers, C. J., and Norcott, Palmer, Zarella, McLachlan, Eveleigh and Harper, Js.

Argued June 24—officially released August 23, 2011

*Jeremiah Donovan*, special public defender, with whom were *Todd A. Bussert* and *Walter C. Bansley III*, special public defenders, for the appellant (defendant).

*Harry Weller*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Gary Nicholson*, senior assistant state's attorney, for the appellee (state).

*William S. Fish, Jr.*, with whom, on the brief, were *Michael C. Sorensen* and *Amy E. Markim*, for the appellees (intervenor the Hartford Courant Company et al.).

*Opinion*

HARPER, J. The defendant, Joshua Komisarjevsky, appeals from the Appellate Court's judgment dismissing, for lack of a final judgment, his appeal from the trial court's decision granting the motion of the intervenors, the Hartford Courant Company (Courant) and one of its reporters, Alaine Griffin, to vacate an order sealing the defendant's "witness list."[1] This court had granted the defendant's petition for certification to appeal limited to the issues of whether "the trial court's decision to grant [the intervenors'] motion to unseal a 'witness list' constitute[s] a final judgment permitting interlocutory review," and "[i]f the decision is an appealable final judgment, [whether] the trial court improperly grant[ed] the [intervenors'] motion to unseal the 'witness list?' " *State* v. *Komisarjevsky*, 301 Conn. 920, 21 A.3d 465 (2011). At oral argument before this court, Chief Justice Rogers raised the issue of whether the defendant's appeal could be treated as a direct public interest appeal

---

[1] As we explain in this opinion, the list at issue is not limited to names of persons who are expected to testify at trial. For convenience, we refer to it as a witness list, but recognize that this label does not describe it with complete accuracy.

pursuant to General Statutes § 52-265a,[2] which permits this court to consider an interlocutory appeal from the trial court. See *Foley* v. *State Elections Enforcement Commission*, 297 Conn. 764, 767 n.2, 2 A.3d 823 (2010); *State* v. *Fernando A.*, 294 Conn. 1, 5 n.3, 981 A.2d 427 (2009); *State* v. *Kemah*, 289 Conn. 411, 414 n.2, 957 A.2d 852 (2008). Following oral argument, this court ordered the parties to file supplemental briefs addressing the questions of whether this court has the authority to treat the certified appeal as a public interest appeal and, if so, whether the Chief Justice should certify the appeal on that basis in the present case. We have concluded that the appeal should be treated as a late petition for certification to appeal under § 52-265a, and the Chief Justice has certified the appeal on that basis.[3] See

[2] General Statutes § 52-265a provides: "(a) Notwithstanding the provisions of sections 52-264 and 52-265, any party to an action who is aggrieved by an order or decision of the Superior Court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the Supreme Court within two weeks from the date of the issuance of the order or decision. The appeal shall state the question of law on which it is based.

"(b) The Chief Justice shall, within one week of receipt of the appeal, rule whether the issue involves a substantial public interest and whether delay may work a substantial injustice.

"(c) Upon certification by the Chief Justice that a substantial public interest is involved and that delay may work a substantial injustice, the trial judge shall immediately transmit a certificate of his decision, together with a proper finding of fact, to the Chief Justice, who shall thereupon call a special session of the Supreme Court for the purpose of an immediate hearing upon the appeal.

"(d) The Chief Justice may make orders to expedite such appeals, including orders specifying the manner in which the record on appeal may be prepared."

[3] Because the court affirmatively acted to take jurisdiction of the case by granting the defendant's petition for certification to appeal from the Appellate Court, the entire court is required to determine whether to treat the petition as a petition to appeal from the trial court's decision before the Chief Justice could consider whether to certify such an appeal pursuant to § 52-265a.

We recognize that the court's decision to treat the appeal from the Appellate Court as a § 52-265a appeal from the trial court is unusual, although

*State* v. *Ayala*, 222 Conn. 331, 342, 610 A.2d 1162 (1992) (treating defendant's petition for certification under General Statutes § 51-197f as late petition for certification under § 52-265a). Therefore, we do not determine whether the Appellate Court properly concluded that the trial court's decision vacating the sealing order was not a final judgment.

With respect to the merits of the trial court's decision, we conclude that the trial court improperly determined that the defendant had not sufficiently demonstrated that the disclosure of the witness list could impair his rights to a fair trial and to prepare a defense. We further conclude that the defendant demonstrated that the potential abridgement of these rights clearly outweighs the right of the intervenors and the public to access this document. Accordingly, we reverse the trial court's order granting the intervenors' motion to vacate the sealing order.

The record reveals the following undisputed facts and procedural history. The defendant has been charged with, inter alia, six counts of capital felony in

not unprecedented. As Justice Zarella points out in his concurring and dissenting opinion, in other cases in which this court has done so, we first have determined whether we have jurisdiction to consider the appeal on the basis presented. We have decided not to do so in the present case for the following reasons. First, in those other cases, there was a clear question as to whether this court had jurisdiction to consider the matter before it. In the present case, it is abundantly clear that this court has jurisdiction over the matter certified from the Appellate Court. Second, although it is clear that we have such jurisdiction, the facts in the present case militate in favor of choosing the most expeditious route properly available to us to avoid potentially irreparable harm to the intervenors' claimed right of access to the witness list: jury selection concluded while this appeal was pending, the presentation of evidence is scheduled to begin in mid-September and the trial court's decision vacating its sealing order has been stayed pending resolution of this appeal. Therefore, because the decision unsealing the witness list presents a matter of substantial public interest, we concluded that the most prudent course was to address the present matter as a § 52-265a appeal.

connection with a triple murder, sexual assault, and arson in a residential neighborhood in Cheshire. In a separate trial, his codefendant, Steven Hayes, has been found guilty of numerous offenses for his part in the crimes and has been sentenced to death.

On March 16, 2011, jury selection in the defendant's case commenced.[4] In accordance with standard practice, prior to jury selection, the trial court directed the parties to submit a list of potential witnesses and persons associated with the prosecution or defense. See Practice Book § 42-11 ("[t]he judicial authority shall require counsel to make a preliminary statement as to the names of other counsel with whom he or she is affiliated and other relevant facts, and shall require counsel to disclose the names, and if ordered by the judicial authority, the addresses of all witnesses counsel intends to call at trial"). The defendant e-mailed his list, containing well over 100 names, to the trial court's clerk. In light of the number of names on the parties' lists, the trial court decided to disseminate the lists to potential jurors for their review, rather than adhering to the court's usual practice of reading aloud the names to a venire panel.

On March 16, 2011, the trial court informed the parties that it had received a request from the media for witness lists and raised the question of whether the lists should be sealed temporarily pending the trial. The prosecutor stated that it would defer to the court on the matter. Defense counsel objected, stating that the witness lists in Hayes' trial had not been disclosed to the public. When defense counsel attempted to explain his more fundamental concern that the media attention given to the case had caused difficulties with witnesses, the trial court interrupted counsel, stated that it understood and that it did not need further argument at that time. The

---

[4] According to the defendant, jury selection concluded on June 14, 2011.

court noted: "[Defense counsel's] point is at least initially persuasive that there's some reason to believe that . . . potential witnesses might receive unwelcome attention that might discourage their willingness to testify in court." The court ordered the witness lists sealed without prejudice, subject to reconsideration should a media organization file a motion to unseal the lists.

On March 22, 2011, the intervenors filed a motion to vacate the sealing order. They contended that the defendant had not followed the requisite procedure or met the requisite burden of proof to overcome the presumptive first amendment and common-law rights of the intervenors and the public to have access to the lists. The intervenors asserted that it defied logic to limit "the public's access to a document that contained information that will inevitably and shortly become public information . . . ." The trial court ordered any party objecting to the motion to submit a list of specific names on their witness list to which further sealing was claimed to be warranted, along with appropriate affidavits, by April 1. The defendant did not submit such a list,[5] but filed a memorandum in opposition to the motion and a supporting affidavit from Jeremiah Donovan, his lead defense counsel.

In his opposition, the defendant claimed that disclosure of his witness list would have a chilling effect on potential witnesses in violation of his sixth amendment right to a fair trial, and that this right trumped any presumptive right of the press and the public to access the list. As a threshold matter, the defendant claimed that the witness list was not a judicial document to

---

[5] In his motion for reconsideration of the trial court's decision granting the intervenors' motion to vacate the sealing order, the defendant asserted that it was unrealistic to expect him to obtain more than 100 affidavits from "already reluctant parties" within the short deadline set by the trial court, and requested an additional six weeks to do so if the court required the affidavits.

which the presumption of public access applied. He further claimed that, if the witness list is a judicial document, its continued sealing is justified because of the substantial probability that, if disclosed, his right to a fair trial would be prejudiced and because no other measure would prevent that harm.

In support of his main contention, the defendant cited the "unprecedented media maelstrom" in which he had been thrust. He claimed that numerous penalty phase witnesses had resisted speaking with the defense team for fear of what might happen should they be associated publicly with the defendant. The defendant further asserted: "The public record offers several ready examples of the insidious and pervasive animus directed at [the defendant] and anyone close to or even perceived to be affiliated with him or . . . Hayes, and confirms the fears and concerns expressed by potential defense witnesses." The defendant pointed to, inter alia, two Courant articles written by Griffin reporting on the harassment suffered by one of Hayes' former employers, who had been compelled by subpoena to testify at the penalty phase of his trial. One of those articles reported: "After her testimony, [the witness] received harassing phone calls and e-mails and was criticized on the Internet. People also called for a boycott of her restaurant. The threats became so frightening that she called the police." A. Griffin, "Defense: Witnesses Wary Of Testifying," Hartford Courant, March 3, 2011, B1.

In Donovan's affidavit, he underscored the effect that disclosure would have on defense counsel's ability to prepare a mitigation defense for the penalty phase of the trial. He pointed to counsel's obligation to conduct an exhaustive investigation of the defendant's history, which the defense was attempting to undertake by interviewing anyone who had interacted with the defendant in a substantive way. Donovan identified twelve persons or groups, by generic descriptions, who had expressed

fear of the consequences should they cooperate with the defense, including reprisals ranging from "community backlash and mistreatment" to "harassment and danger . . . ."[6] Donovan attested that members of the defense team themselves had suffered a backlash from family, friends and the public because of their involvement in the case. He also noted threats received by the defendant's family that had resulted not only in their having to relocate from their longtime home, but also in their loss of custody of the defendant's daughter.

With respect to the contents of the witness list, Donovan attested that the defense team was certain that it would not call all of the persons listed to testify, and that it was likely that many of the names on the list would never even be mentioned in court. He asserted that "the list was overly inclusive out of an abundance of caution, so as to prevent a situation in mid-trial where a juror might have to be excused based on knowing someone associated with the case albeit tangentially." Donovan asserted that, when submitting such an expansive list, the defense team had relied on the court clerk's representation that the lists submitted in Hayes' case had not been disclosed,[7] and that, had they known that the witness list would be disclosed, they would have included far fewer names "to avoid the risk of harm and intimidation to innocent third parties."

The trial court granted the intervenors' motion to vacate the sealing order. In its decision, the court first

---

[6] The descriptions broadly described the person's relationship to the defendant or the victims, i.e., "[a]n extended family member through marriage," "[a] childhood friend of [the defendant] who still resides in Cheshire," "[i]ndividuals with ties to [the victims'] United Methodist Church . . . ." The defendant explained in his motion for reconsideration that Donovan had provided general descriptions to protect the identity of these persons in documents that would be part of the court record.

[7] The parties dispute whether the witness list in Hayes' trial actually was disclosed. The defendant submitted an affidavit from Thomas Ullmann, one of Hayes' public defenders, attesting that, to the best of his knowledge and recollection, the list from Hayes' trial had not been made public.

noted that the defendant did not dispute the status of the witness list as a judicial document "filed with the court" within the meaning of Practice Book § 42-49A.[8] See footnote 11 of this opinion. Nonetheless, the court pointed out that witness lists generally are intended to be public, which triggers the presumption that the list in the present case should be made available to the public. The court then concluded: "Documents to which the public has a presumptive right of access may be sealed only if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest. *Press-Enterprise Co.* v. *Superior Court*, 478 U.S. 1, 13–14 [106 S. Ct. 2735, 92 L. Ed. 2d 1] (1986). . . . The defendant's generalized concerns are understandable, but they remain generalized concerns. No materials have been submitted, under seal or otherwise, concerning threats or intimidation with respect to specific names on the list. Under these circumstances, the

---

[8] In both his memorandum in opposition to the intervenors' motion to vacate the sealing order and his subsequent motion for reconsideration, the defendant clearly asserted a claim that the witness list was not a judicial document, as defined by this court in *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 46–47, 970 A.2d 656, cert. denied sub nom. *Bridgeport Roman Catholic Diocesan Corp.* v. *New York Times Co.*, 558 U.S. 991, 130 S. Ct. 500, 175 L. Ed. 2d 348 (2009). Specifically, in support of that claim, he asserted that "[t]he list is ministerial in nature created by a party to the proceeding to help identify those venire persons who might know someone associated with this case. The [c]ourt took no role in the creation of the parties' respective lists beyond attaching the state's [list] to [the defendant's] and making photocopies for distribution to venire panels." We therefore assume that the trial court's statement was intended to indicate that the defendant had not claimed that e-mailing the witness list to the court clerk, rather than formally filing the document, had any bearing on whether the list was "filed with the court" under Practice Book § 42-49A. We note that, in his brief to this court, the defendant does appear to make such a claim. It is well settled, however, that, with limited exceptions not applicable to the present case, an appellant is not entitled to review of a claim that was not raised before the trial court. *Remillard* v. *Remillard*, 297 Conn. 345, 351, 999 A.2d 713 (2010).

motion to vacate the sealing order must be granted."
(Internal quotation marks omitted.)

Thereafter, the defendant filed a motion for reconsideration, supported by another affidavit in which Donovan further elaborated on the fears expressed by certain persons mentioned in his previous affidavit regarding the consequences of cooperating with the defense team and reports by several of these persons that the press already had " 'hounded' " them. The trial court denied the motion for reconsideration, but temporarily stayed its order unsealing the list to allow the defendant to obtain a further stay from a reviewing court.

The defendant appealed from the trial court's decision unsealing the list to the Appellate Court. Thereafter, the Appellate Court granted the defendant's motion for an emergency temporary stay of that decision. In that order, the Appellate Court sua sponte directed the parties to file memoranda addressing the question of whether the defendant's appeal should be dismissed for lack of a final judgment. Following submission of the parties' briefs, the Appellate Court dismissed the appeal. Thereafter, the Appellate Court granted the defendant's motion for an extension of the stay pending this court's resolution of the defendant's petition for certification to appeal.

As we previously have noted, having decided to treat the defendant's petition for certification to appeal as a § 52-265a direct appeal from the trial court's judgment, the sole issue before us is whether that court properly granted the intervenors' motion to unseal the defendant's witness list. The parties appear to agree that the trial court properly considered the issue as whether to grant a sealing order, not whether to modify an existing one, presumably because the court sealed the witness list without prejudice and did not require the defendant

to satisfy the requirements of Practice Book § 42-49A.[9] Compare *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 66, 970 A.2d 656 (setting forth standard for modifying sealing order),[10] cert. denied sub nom. *Bridgeport Roman Catholic Diocesan Corp.* v. *New York Times Co.*, 558 U.S. 991, 130 S. Ct. 500, 175 L. Ed. 2d 348 (2009), with Practice Book § 42-49A (setting forth standard for motion to seal documents).[11]

[9] In its memorandum of decision vacating the sealing order, the trial court explained that, "[g]iven the press of immediate business, there was no opportunity to consider the merits of the request at the time it was made."

[10] "Under [the standard for modifying an order sealing court documents], the *moving* party bears the burden of demonstrating that appropriate grounds exist for modifying sealing orders. These grounds include: the original basis for the sealing orders no longer exists; the sealing orders were granted improvidently; or the interests protected by sealing the information no longer outweigh the public's right to access." (Emphasis added.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 292 Conn. 66.

[11] Practice Book § 42-49A provides in relevant part: "(a) Except as otherwise provided by law, there shall be a presumption that documents filed with the court shall be available to the public. . . .

"(c) Upon written motion of the prosecuting authority or of the defendant, or upon its own motion, the judicial authority may order that files, affidavits, documents, or other materials on file or lodged with the court or in connection with a court proceeding be sealed or their disclosure limited only if the judicial authority concludes that such order is necessary to preserve an interest which is determined to override the public's interest in viewing such materials. The judicial authority shall first consider reasonable alternatives to any such order and any such order shall be no broader than necessary to protect such overriding interest. An agreement of the parties to seal or limit the disclosure of documents on file with the court or filed in connection with a court proceeding shall not constitute a sufficient basis for the issuance of such an order.

"(d) In connection with any order issued pursuant to subsection (c) of this section, the judicial authority shall articulate the overriding interest being protected and shall specify its findings underlying such order and the duration of such order. If any finding would reveal information entitled to remain confidential, those findings may be set forth in a sealed portion of the record. . . .

"(e) Except as otherwise ordered by the judicial authority, a motion to seal or limit the disclosure of affidavits, documents, or other materials on file or lodged with the court or in connection with a court proceeding shall be calendared so that notice to the public is given of the time and place of the hearing on the motion and to afford the public an opportunity to be heard on the motion under consideration. . . .

"(f) . . . (2) The judicial authority may issue an order sealing the contents of an entire court file only upon a finding that there is not available a more narrowly tailored method of protecting the overriding interest, such as

"We review a trial court's decision granting or denying a motion to seal to determine whether, in making the decision, the court abused its discretion. . . . When reviewing a trial court's exercise of the legal discretion vested in it, our review is limited to whether the trial court correctly applied the law and reasonably could have concluded as it did." (Citations omitted; internal quotation marks omitted.) *Vargas* v. *Doe*, 96 Conn. App. 399, 408–409, 900 A.2d 525, cert. denied, 280 Conn. 923, 908 A.2d 546 (2006); accord *Bank of New York* v. *Bell*, 120 Conn. App. 837, 848, 993 A.2d 1022, cert. dismissed, 298 Conn. 917, 4 A.3d 1225 (2010); *Preston* v. *O'Rourke*, 74 Conn. App. 301, 317, 811 A.2d 753 (2002).

Practice Book § 42-49A, which addresses sealing or limiting disclosure of documents in criminal cases; see footnote 11 of this opinion; provides in relevant part: "Except as otherwise provided by law, there shall be a presumption that documents filed with the court shall be available to the public." Practice Book § 42-49A (a). In *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 292 Conn. 30, this court noted, with respect to the civil case counterpart to § 42-49A, that the rule of practice codifies the common law. With respect to the basis for and parameters of the common law, the court explained: "Public access to court documents traces its roots back centuries through the common law, stemming from the practice of open trials. . . . The rationale underlying the presumption is straightforward: Public monitoring of the judicial process through open court proceedings and records enhances confidence in the judicial system by ensuring that justice is administered equitably and in accordance with established procedures. . . . [T]he bright light

redaction or sealing a portion of the file. The judicial authority shall state in its decision or order each of the more narrowly tailored methods that was considered and the reason each such method was unavailable or inadequate. . . ."

cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness. . . .[12]

"This presumption of public access, however, is not absolute. . . . When the public's interest in judicial monitoring is outweighed by countervailing considerations, such as certain privacy concerns, or if access is sought for improper purposes . . . court documents or proceedings may be shielded from public view."

---

[12] The presumption of access also has constitutional underpinnings. "The Supreme Court has . . . firmly established that the public has a [f]irst [a]mendment right of access to criminal trials. *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596, 102 S. Ct. 2613, 73 L. Ed. 2d 248 (1982); *Richmond Newspapers, Inc.* v. *Virginia,* 448 U.S. 555, 100 S. Ct. 2814, 65 L. Ed. 2d 973 (1980). This right rests in part on the fact that the criminal trial historically has been open to the press and general public and in part on the fact that public access to criminal trials permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government. *Globe Newspaper Co.* v. *Superior Court,* [supra, 605–606] . . . . The court has . . . declared that the [f]irst [a]mendment right of access extends to the voir dire of prospective jurors. *Press-Enterprise Co.* v. [*Superior Court,* 464 U.S. 501, 508–10], 104 S. Ct. 819, 79 L. Ed. 2d 629 (1984)." (Internal quotation marks omitted.) *In re Globe Newspaper Co.,* 729 F.2d 47, 51 (1st Cir. 1984).

Although, in the present case, the intervenors cite a first amendment right of access, they analyze that concern under the same rubric as their common-law right of access. The federal courts appear to apply a heightened threshold to determine whether a "qualified" first amendment right to access exists. *Lugosch* v. *Pyramid Co. of Onondaga-Ga.,* 435 F.3d 110, 120 (2d Cir. 2006). Once that right arises, however, essentially the same balancing test for limiting access under the common law appears to apply. See id. ("A court's conclusion that a qualified [f]irst [a]mendment right of access to certain judicial documents exists does not end the inquiry. [D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." [Internal quotation marks omitted.]). Therefore, our conclusion with regard to the intervenors' common-law right of access also disposes of their first amendment claim.

(Citations omitted; internal quotation marks omitted.) Id., 34–35.

"[N]ot all documents in the court's possession are presumptively open. The presumption of public access applies only to judicial documents and records. . . . Such documents provide a surrogate to assist the public in monitoring the judicial process when it cannot be present. . . . Therefore, when determining whether a document should be open to the public, the threshold question under the common law is whether the document constitutes a judicial document." (Citations omitted; internal quotation marks omitted.) Id., 37. A judicial document is "any document filed that a court reasonably may rely on in support of its adjudicatory function . . . ." Id., 46.

We note at the outset that serious questions exist as to whether the witness list in the present case constitutes a judicial document. See footnote 8 of this opinion. Nonetheless, for purposes of this appeal, we assume, without deciding, that the witness list is a judicial document and, accordingly, that the public presumptively is entitled to access to it. Operating under this assumption, the question is whether the trial court abused its discretion in concluding that the defendant had expressed only "generalized concerns" and could not overcome the presumption of public access without submitting evidence of "threats or intimidation with respect to specific names on the list." We conclude that this standard was improper in light of the nature of the defendant's claim, the extraordinary circumstances surrounding the present case and the facts in the record.

Undoubtedly, the defendant bears the burden of proving that sealing a document is warranted. *Bank of New York* v. *Bell*, supra, 120 Conn. App. 857; *Vargas* v. *Doe*, supra, 96 Conn. App. 410. Moreover, as the trial court properly noted: "Documents to which the public has a

presumptive right of access may be sealed only if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest. *Press-Enterprise Co.* v. *Superior Court*, [supra, 478 U.S. 13–14]." (Internal quotation marks omitted.) See Practice Book § 42-49A (c) (Documents may be sealed "only if the judicial authority concludes that such order is necessary to preserve an interest which is determined to override the public's interest in viewing such materials. The judicial authority shall first consider reasonable alternatives to any such order and any such order shall be no broader than necessary to protect such overriding interest.").

The defendant claims that his rights to a fair trial and to prepare a defense would be irreparably harmed by the disclosure of the witness list. The United States Supreme Court once observed that "[n]o right ranks higher than the right of the accused to a fair trial." *Press-Enterprise Co.* v. *Superior Court*, 464 U.S. 501, 508, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984). "Whether rooted directly in the [d]ue [p]ocess [c]lause of the [f]ourteenth [a]mendment . . . or in the [c]ompulsory [p]rocess or [c]onfrontation clauses of the [s]ixth [a]mendment . . . the [c]onstitution guarantees criminal defendants a meaningful opportunity to present a complete defense. . . . [Cf.] *Strickland* v. *Washington*, 466 U.S. 668, [684–85, 104 S. Ct. 2052, 80 L. Ed. 2d 684] (1984) ([t]he [c]onstitution guarantees a fair trial through the [d]ue [p]rocess [c]lauses, but it defines the basic elements of a fair trial largely through the several provisions of the [s]ixth [a]mendment)." (Citations omitted; internal quotation marks omitted.) *Crane* v. *Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986). The right to prepare a defense for its presentation at trial is an integral part of a fair trial, and includes investigation of material facts and access

to potential witnesses. *United States* v. *Sanchez*, 988 F.2d 1384, 1391 (5th Cir. 1993); *Kines* v. *Butterworth*, 669 F.2d 6, 9 (1st Cir. 1981), cert. denied, 456 U.S. 980, 102 S. Ct. 2250, 72 L. Ed. 2d 856 (1982); *United States* v. *Scott*, 518 F.2d 261, 268 (6th Cir. 1975); *Gregory* v. *United States*, 369 F.2d 185, 188 (D.C. Cir. 1966); *Commonwealth* v. *Campbell*, 378 Mass. 680, 699, 393 N.E.2d 820 (1979). This does not mean that the defendant has a right to the cooperation of witnesses in the course of his investigation of the material facts, but that he has the right to conduct his investigation unimpeded by the state. *Byrnes* v. *United States*, 327 F.2d 825, 832 (9th Cir.) ("It is true that any defendant has the right to attempt to interview any witnesses he desires. It is also true that any witness has the right to refuse to be interviewed, if he so desires [and is not under or subject to legal process]."), cert. denied, 377 U.S. 970, 84 S. Ct. 1652, 12 L. Ed. 2d 739 (1964).

Moreover, the Supreme Court has "long recognized that adverse publicity can endanger the ability of a defendant to receive a fair trial. . . . To safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity. . . . And because of the [c]onstitution's pervasive concern for these due process rights, a trial judge may surely take protective measures even when they are not strictly and inescapably necessary." (Citations omitted.) *Gannett Co.* v. *DePasquale*, 443 U.S. 368, 378, 99 S. Ct. 2898, 61 L. Ed. 2d 608 (1979).

In the present case, the trial court did not weigh the defendant's fundamental rights against the public's right of access to the witness list because of the defendant's failure to introduce evidence that specific persons on the list had been intimidated. This conclusion was improper for several reasons.

First, by imposing this standard, the trial court essentially required the defendant to prove that the harm he sought to avoid by obtaining the sealing order already had occurred. The sealing order is intended to shield potential witnesses or sources from public pressure, manifested through threats or condemnation, that would deter their cooperation. The harm alleged is, by its nature, somewhat predictive. Even for those persons who must know that the defendant will call them as witnesses, the fear of public reaction and the effect of the actual manifestation of that reaction are two different things. Should the harm arise that the defendant claims, it is difficult to imagine how the court could measure that harm and, if measurable, how such harm could be remedied. The defendant may never know what information he could have obtained from a reluctant source, and a person who initially refused to cooperate would seem to be no more likely to do so should a new trial be ordered.

Second, the record demonstrates that this prediction has a basis in fact. There is no doubt that the attention generated by this case is extraordinary. As the trial court's own statements in these proceedings indicate, this case has received intense media coverage, particularly in this state, but also nationally and even internationally. At a hearing on the defendant's motion for a change of venue, one defense witness submitted the results of an Internet search that had yielded more than 1800 media reports on the cases involving the defendant and Hayes. See *State* v. *Komisarjevsky*, Superior Court, judicial district of New Haven, Docket No. CR-07-241860 (February 28, 2011). The trial court expressly acknowledged in its decision denying that motion that this publicity, in turn, has "aroused intense public interest." Id. Indeed, according to evidence from that change of venue hearing, the percentage of the public who are aware of this case makes it one of this state's most

notorious cases, at least in recent memory.[13] Because of the strong public sentiment generated by this coverage, according to Donovan's affidavit in support of the defendant's motion for reconsideration of the court's decision to vacate the sealing order, the defense's mitigation expert reported that, of the twenty capital cases on which she has worked, "she has never encountered such a pervasive sense of fear and reprisal by so many individuals with connections to a defendant." Indeed, presumably it was because of concern regarding public reaction to the case that the trial court sua sponte raised the issue of whether the lists should be sealed pending trial.

Third, the record substantiates that some persons connected with the defendant's case already have been subjected to intimidation. Defense counsel and members of the defendant's family have been harassed. The hostility that was reported to be levied at Hayes' former employer following her testimony at his trial provides a reasonable basis to predict what other potential witnesses might face should their names be disclosed before trial in the present case.[14] Indeed, in light of the Courant articles reporting this matter, the question is not simply whether potential witnesses might actually receive similar treatment but whether they reasonably might fear such treatment because of what happened following Hayes' trial. Such fear undoubtedly could affect their willingness to cooperate with the defendant's investigation and the presentation of his case.

[13] The defendant submitted telephone surveys conducted by Steven Penrod, a professor of psychology at John Jay College of Criminal Justice, reflecting the highest level of case recognition that Penrod ever had seen, ranging from 97 percent in Stamford-Norwalk to 99.5 percent in New Haven. *State* v. *Komisarjevsky*, supra, Superior Court, Docket No. CR-07-241860.

[14] Although the articles regarding this incident were discussed in the defendant's memorandum in opposition to the intervenors' motion to vacate the sealing order, not in Donovan's supporting affidavit, the intervenors' are the source of these articles and they do not contest the accuracy of the information therein.

We also find significant Donovan's representation that the witness list includes potential witnesses, persons who will not testify but whose names might come up during trial, and persons who might be interviewed but never called as witnesses or mentioned at trial. With respect to witnesses or persons whose names will be mentioned at trial, the intervenors concede in their motion to vacate that these names "inevitably and shortly [will] become public information . . . ." Therefore, the public's interest in disclosure in this information is weaker than it would be if there was no timely, eventual discovery.[15] With respect to persons listed who never will testify or be mentioned at trial, the intervenors were unable to identify, upon inquiry from this court at oral argument, any interest served by public disclosure of these names beyond the general interest that public access to voir dire proceedings serves. We are fully mindful of the importance of this right as a general matter; see *Press-Enterprise Co.* v. *Superior Court,* supra, 464 U.S. 508 ("the primacy of the accused's right is difficult to separate from the right of everyone in the community to attend the voir dire which promotes fairness"); but we see nothing more than a

---

[15] We underscore that it is both the nonessential nature of the information to the public's understanding of the voir dire proceeding and the imminent disclosure that diminishes the public's right of access in the present case. We do not conclude that delayed disclosure as a general matter satisfies the public's right of access to judicial proceedings. See *In re Charlotte Observer,* 882 F.2d 850, 856 (4th Cir. 1989) (The court explained that a magistrate judge's undervaluation of a first amendment interest "is most directly reflected in his perception that public disclosure, immediately after a jury is selected, of the basis for his earlier change of venue ruling and of the proceedings themselves necessarily would protect the right of access asserted by representatives of the press and public. In the magistrate's expressed view, the only effect of his closure order, as so shaped, was a 'minimal delay' in access to the materials upon which a judicial decision was made and to the judicial reasoning behind the decision. This unduly minimizes, if it does not entirely overlook, the value of 'openness' itself, a value which is threatened whenever immediate access to ongoing proceedings is denied, whatever provision is made for later public disclosure.").

potential de minimus impact on that right to disclosure by depriving the public of the names of persons who will have no direct bearing on the trial. See id., 511 n.10 ("[I]n some limited circumstances, closure may be warranted. Thus a trial judge may, in the interest of the fair administration of justice, impose reasonable limitations on access to a trial. [T]he question in a particular case is whether that control is exerted so as not to deny or unwarrantedly abridge . . . the opportunities for the communication of thought and the discussion of public questions immemorially associated with resort to public places." [Internal quotation marks omitted.]). Indeed, the disclosure of the witness list would not appreciably diminish "the possibilities for injustice, incompetence, perjury and fraud"; (internal quotation marks omitted) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 292 Conn. 35; or contribute in any meaningful manner to "a more complete understanding of the judicial system and a better perception of its fairness." (Internal quotation marks omitted.) Id.

In a related context, one court explained: "When the rights of the accused and those of the public come irreconcilably into conflict, the accused's [s]ixth [a]mendment right to a fair trial must, as a matter of logic, take precedence over the public's [f]irst [a]mendment right of access to pretrial proceedings. There is little to be gained by admitting the public to pretrial proceedings in order to promote the appearance of fairness if the very presence of the public makes a fair trial impossible." *In re Globe Newspaper Co.*, 729 F.2d 47, 53 (1st Cir. 1984).

In light of the aforementioned factors, we conclude that the trial court abused its discretion in failing to consider the effect of disclosing the witness list on the defendant's sixth amendment rights. Moreover, in light of the nature of the harm sought to be avoided, we agree with the defendant that the only means to protect

this interest is to continue the sealing of the witness list. The public's interest in knowing the identity of *possible* defense witnesses under the circumstances in the present case is extremely limited, and, to the extent that the list contains relevant information, the public's interest adequately is protected by its access to the voir dire proceedings and the trial.

The certified appeal is dismissed; upon the granting of review pursuant to § 52-265a, the order of the trial court vacating the sealing order is reversed and the case is remanded to that court with direction to reinstate the sealing order.

In this opinion ROGERS, C. J., and NORCOTT, PALMER and EVELEIGH, Js., concurred.

ZARELLA, J., with whom McLACHLAN, J., joins, concurring in part and dissenting in part. I respectfully disagree with the majority's decision to treat the petition of the defendant, Joshua Komisarjevsky, for certification to appeal from the order of the Appellate Court as a petition for review pursuant General Statutes § 52-265a. I instead would directly address the issues presented in the petition for certification and conclude that the order of the trial court from which the defendant appealed should be subject to interlocutory review pursuant to *State* v. *Curcio*, 191 Conn. 27, 31, 463 A.2d 566 (1983). I agree with the majority, however, that the trial court's order vacating the sealing of the defendant's witness list should be reversed for the reasons on which it relies in its opinion. Accordingly, I concur only in the result that the majority reaches, namely, its reversal of the trial court's order.

I

I begin with the reasons for my disagreement with the majority's decision to treat the defendant's petition

as a petition for review pursuant to § 52-265a. At the outset, I emphasize that I take no position as to whether the defendant's petition for certification to appeal, if treated as a petition for review, should be granted. That decision lies solely within the discretion of the Chief Justice. See General Statutes § 52-265a (b). Whether the defendant's petition for certification to appeal should be treated as a petition for review under § 52-265a is, however, a decision for this court to make. For the reasons that follow, I disagree with the majority's decision to treat the defendant's petition for certification to appeal as a petition for review.

First, this appeal came to this court by way of a petition for certification to appeal from the order of the Appellate Court dismissing the defendant's appeal from the trial court's order for lack of a final judgment, and this court has granted appellate review of the Appellate Court's order as to that issue. The final judgment question in this case was raised and briefed in the Appellate Court, and that court dismissed the appeal on the ground that the defendant's appeal was not from a final judgment or appealable order. Furthermore, the parties have fully briefed and argued this issue before this court in accordance with the first certified question, which specifically addresses whether "the trial court's decision to grant [the intervenors'] motion to unseal a 'witness list' constitute[s] a final judgment permitting interlocutory review?" *State* v. *Komisarjevsky*, 301 Conn. 920, 21 A.3d 465 (2011). This court should first answer the certified question before moving on to consider other jurisdictional bases.

Second, the defendant specifically chose not to file a petition for review of the trial court's order pursuant to § 52-265a. The record before the trial court demonstrates that the defendant was fully aware of his right to file a petition for review pursuant to § 52-265a, but the defendant nevertheless chose not to do so and,

instead, appealed directly to the Appellate Court from the trial court's order.[1] The possibility that this court might review the order pursuant to § 52-265a was not addressed further by any party until this court raised it, sua sponte, at oral argument, in the certified appeal. The defendant, therefore, chose to pursue a direct appeal with the Appellate Court and presented his arguments through a direct appeal in both appellate forums in this state.

Third, the intervenors, the Hartford Courant Company (Courant) and Alaine Griffin, a reporter for the Courant, have contested this court's power to construe the defendant's petition for certification to appeal as a petition for review under § 52-265a,[2] which permits "appeals only from orders or decisions of the Superior Court." *Hall* v. *Gilbert & Bennett Mfg. Co.*, 241 Conn. 282, 299, 695 A.2d 1051 (1997). The defendant already appealed from the trial court's order to the Appellate Court and has petitioned this court for certification to appeal from the order of the Appellate Court dismissing the defendant's appeal. In their supplemental brief to this court, the intervenors claim that, because the defendant has asked this court to review the Appellate Court's order, and not that of the trial court, his petition appears to fall outside the scope of § 52-265a. The majority does

[1] In his motion for reconsideration of the trial court's order vacating the sealing order, the defendant explained that a petition for review was not a feasible option for appellate review of the trial court's order because, "[a]lthough the court's decision is of great importance to [the defendant], counsel cannot say in good faith and candor that this issue is a matter of *substantial* public interest, a condition precedent to seeking review pursuant to . . . § 52-265a . . . ." (Emphasis in original.) Presumably for this reason, the defendant thereafter did not seek appellate review on that basis.

[2] General Statutes § 52-265a provides in relevant part: "(a) Notwithstanding the provisions of sections 52-264 and 52-265, any party to an action who is aggrieved by an order or decision of the Superior Court in an action which involves a matter of substantial public interest and in which delay may work a substantial injustice, may appeal under this section from the order or decision to the Supreme Court . . . ."

not, however, resolve or even address this jurisdictional claim by one of the parties, notwithstanding this court's duty to resolve a jurisdictional claim as a threshold matter before reaching the merits of the appeal. See, e.g., *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005) (court must address subject matter jurisdiction issues before considering merits of appeal).

Fourth, as I will discuss more fully in this opinion, I would conclude that the trial court's order in the present case qualifies as an appealable interlocutory order under *State* v. *Curcio*, supra, 191 Conn. 31, and that it is therefore unnecessary to construe the defendant's petition for certification to appeal as a petition for review in order to assume jurisdiction over the defendant's case. The defendant has presented a very strong argument that the trial court's order may fall within one or both prongs of the *Curcio* test for the appealability of interlocutory orders, and the facts discussed and the conclusions reached by the majority fully support such a determination. If the trial court's order is appealable pursuant to *Curcio*, then this court can reach the merits of the defendant's appeal without considering whether his petition for certification to appeal should be construed as a petition for review under § 52-265a.

Finally, even if this court were to conclude that the trial court's order does not qualify as a final judgment for purposes of *Curcio*, this court should explain that decision first and then proceed to consider whether the order nevertheless should be reviewed under § 52-265a. In prior instances, in which this court has decided to treat other appeals from interlocutory orders as being brought pursuant to § 52-265a, this court typically decides first whether the party's appeal is from a final judgment and then explains whether it nevertheless may decide the appeal under § 52-265a. See, e.g., *Hall* v. *Gilbert & Bennett Mfg. Co.*, supra, 241 Conn. 293–301;

*State* v. *Ayala*, 222 Conn. 331, 338–42, 610 A.2d 1162 (1992); cf. *State* v. *Fielding*, 296 Conn. 26, 33–43 and n.7, 994 A.2d 96 (2010). This mode of analysis makes sense. Our case law is developed through written opinions, which explain the reasoning for a court's decision and have a precedential value that provides guidance and predictability to courts, attorneys and the citizens of this state. I see no reason why this court should depart from its traditional mode of analysis in the present case.

The majority gives two reasons for not addressing the jurisdictional questions. First, the majority contends that "it is abundantly clear that this court has jurisdiction over the matter certified from the Appellate Court." Footnote 3 of the majority opinion. Second, it contends that bypassing our traditional analysis is "the most expeditious route properly available . . . ." Id. I disagree and am not persuaded by either justification. First, the fact that this case comes to this court by way of a certified appeal does not distinguish this case from our prior cases in which we have first resolved a final judgment question before considering whether to treat the appeal as a petition for review. In at least two instances in which § 52-265a was considered as a possible ground for jurisdiction, the case came to this court either by way of certified appeal from the Appellate Court or a transfer, which are each sufficient to vest this court with jurisdiction to review whether an interlocutory order or decision is appealable. See *State* v. *Fielding*, supra, 296 Conn. 33–35 and n.7 (certified appeal); *Hall* v. *Gilbert & Bennett Mfg. Co.*, supra, 241 Conn. 288–89 (transfer of appeal from Appellate Court, where appeal from decision of compensation review board had been filed). In each of these cases, this court first determined that the order or decision from which the appellant appealed was not a final judgment *before* considering whether to treat the petition for certifica-

tion as a late petition for review pursuant to § 52-265a. See *State* v. *Fielding*, supra, 296 Conn. 33–35 and n.7 (concluding, in certified appeal from Appellate Court, that interlocutory order was not final judgment, and Chief Justice denied review pursuant to § 52-265a); *Hall* v. *Gilbert & Bennett Mfg. Co.*, supra, 294, 298–301 (concluding, in appeal transferred from Appellate Court to this court, that interlocutory decision was not final judgment but that § 52-265a provided alternative basis for appellate jurisdiction). Therefore, the fact that the appeal in the present case comes to this court by way of a petition for certification in no way distinguishes it from our prior cases or justifies a departure from our customary order of analysis. Second, the majority's approach is not any more expeditious in resolving this case than our traditional analysis because, as I will discuss more fully in this opinion, much of the analysis that the majority employs in deciding the merits of this appeal is directly applicable to a *Curcio* analysis. I therefore see no reason why we should avoid the jurisdictional question that this court already has certified and that already has been briefed and argued by the parties.

For the foregoing reasons, I respectfully dissent from the majority opinion insofar as the majority construes the defendant's petition for certification to appeal as a petition for review under § 52-265a.

II

In light of my disagreement with the majority's decision to treat the defendant's petition for certification to appeal as a petition for review, I next must determine whether the Appellate Court properly concluded that the trial court's order in the present case was not an appealable interlocutory order under *Curcio*. For the reasons that follow, I would reverse the order of the

Appellate Court dismissing the defendant's appeal and review the defendant's claims on their merits.

I begin my analysis by reviewing the relevant legal principles. "The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law [over which we exercise plenary review]." (Internal quotation marks omitted.) *Palmer* v. *Friendly Ice Cream Corp.*, 285 Conn. 462, 466, 940 A.2d 742 (2008). "We previously have noted that [t]he right of appeal is purely statutory. It is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met. . . . Moreover, [t]he statutory right to appeal is limited to appeals by aggrieved parties from final judgments . . . and we have observed that [l]imiting appeals to judgments that are final serves the important public policy of minimizing interference with and delay in the resolution of trial court proceedings. . . . Because our jurisdiction over appeals . . . is prescribed by statute, we must always determine the threshold question of whether the appeal is taken from a final judgment before considering the merits of the claim." (Citations omitted; internal quotation marks omitted.) *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 279 Conn. 220, 224–25, 901 A.2d 1164 (2006).

"In a criminal proceeding, there is no final judgment until the imposition of a sentence. . . . The general rule is . . . that interlocutory orders in criminal cases are not immediately appealable." (Citations omitted; internal quotation marks omitted.) *State* v. *Fielding*, supra, 296 Conn. 36. "In both criminal and civil cases . . . [however] we have determined [that] certain interlocutory orders and rulings of the Superior Court [were] final judgments for purposes of appeal. An otherwise interlocutory order is appealable in two circumstances:

(1) [when] the order or action terminates a separate and distinct proceeding, [and] (2) [when] the order or action so concludes the rights of the parties that further proceedings cannot affect them. . . . *State* v. *Curcio*, supra, 191 Conn. [31]. The first prong of the *Curcio* test . . . requires that the order being appealed from be severable from the central cause of action so that the main action can proceed independent of the ancillary proceeding. . . .

"The second prong of the *Curcio* test focuses on the nature of the right involved. It requires the parties seeking to appeal to establish that the trial court's order threatens the preservation of a right already secured to them and that that right will be irretrievably lost and the [parties] irreparably harmed unless they may immediately appeal. . . . Thus, a bald assertion that [the appellant] will be irreparably harmed if appellate review is delayed until final adjudication . . . is insufficient to make out an otherwise interlocutory order a final judgment. One must make at least a colorable claim that some recognized statutory or constitutional right is at risk. . . . The [appellant] must show that [the trial court's] decision threatens to abrogate a right that he or she *then* holds." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, supra, 279 Conn. 225–26. "For a claim to be colorable, the defendant need not convince the trial court that he necessarily will prevail; he must demonstrate simply that he *might* prevail." (Emphasis in original.) *State* v. *Tate*, 256 Conn. 262, 276–77, 773 A.2d 308 (2001).

Ordinarily, this court is reluctant to grant interlocutory review to orders of the trial court prior to sentencing, and for good reason. This reluctance serves the important goals of operating a swift and efficient criminal justice system. See, e.g., *State* v. *Coleman*, 202 Conn.

86, 92, 519 A.2d 1201 (1987); *State* v. *Parker*, 194 Conn. 650, 655–56, 485 A.2d 139 (1984); *State* v. *Curcio*, supra, 191 Conn. 30–31. Most·issues that arise in connection with interlocutory orders are easily reviewable, and any impropriety is effectively curable upon appellate review after a final judgment. See *State* v. *Parker*, supra, 658. Furthermore, an acquittal in a criminal case essentially will render moot interlocutory issues that otherwise would be appealable in the event of a conviction. By reserving appellate review until the completion of the trial court proceedings, our courts avoid the dreaded delay brought about by piecemeal litigation, thereby furthering the defendant's and the public's interest in timely resolutions to criminal proceedings. See id., 656 ("[p]iecemeal appeals are disfavored because the delay resulting therefrom does not serve the public's interest in swift and certain justice").

Notwithstanding this justified reluctance to review interlocutory orders in criminal proceedings, this court nevertheless must retain flexibility to review orders in those rare situations in which the delay of appellate review will result in a substantial probability of irreparable harm to the rights of the parties and will undermine the effectiveness of our criminal justice system. In these situations, any harm from inefficiencies or delays in the criminal justice process is dwarfed by society's fundamental and overarching interest in ensuring the fairness and integrity of the criminal process. See, e.g., *Press-Enterprise Co.* v. *Superior Court*, 464 U.S. 501, 508, 104 S. Ct. 819, 78 L. Ed. 2d 629 (1984) ("[n]o right ranks higher than the right of the accused to a fair trial"). To this end, our federal and state constitutions guarantee fundamental protections to the criminal defendant to ensure that he receives a fair opportunity to defend against the deprivation of his liberty by the state. These protections balance our adversarial system and help to maintain confidence in our criminal justice

system. It therefore is imperative that interlocutory review be afforded in those unique cases in which a defendant's right to defend himself is threatened with irreparable and immeasurable harm.

Applying the foregoing principles, I would conclude that the unique facts of the present case demonstrate that this court should review the trial court's unsealing order under the second prong of *Curcio* because the defendant has established a colorable claim that delay of appellate review threatens to abrogate his due process right to a fair trial. First, it is undisputed that a criminal defendant has the constitutional right to a fair trial. See, e.g., id. As the majority notes, "adverse publicity can endanger the ability of a defendant to receive a fair trial," and, "[t]o safeguard the due process rights of the accused, a trial judge has an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity." (Internal quotation marks omitted.) Furthermore, the defendant's right to a fair trial encompasses a right to prepare a defense. As the majority further notes, this right includes access to potential witnesses to prepare and present a defense. Thus, the defendant's right to access potential witnesses in preparation of his defense is not disputed. Cf. *State* v. *Longo*, 192 Conn. 85, 91, 469 A.2d 1220 (1984) ("[t]he defendant must show that [the trial court's] decision threatens to abrogate a right that he or she *then* holds" [emphasis in original]).

Second, the facts of this case demonstrate that the disclosure of the defendant's witness list threatens his right to a fair trial. The record in the present case, including the affidavits, media reports and testimony presented by the defendant, establishes that this case has received extraordinary, if not unprecedented, media attention in this state that may hinder the defendant's ability to prepare and present a defense if the witness list is released to the public. These facts include: (1)

the trial court's own acknowledgment of the "intense public interest" in the present case; (2) surveys indicating unparalleled case recognition of the case by the public; (3) the saturation of coverage in the media; (4) information from a defense expert indicating a "pervasive sense of fear and reprisal" by potential witnesses; (5) the documented extreme hostility directed at the defendant, his counsel, and those connected to him; (6) the experience of at least one defense witness during the trial of Steven Hayes, a participant in the defendant's alleged crimes; (7) the affidavit of defense counsel establishing that several potential witnesses will not cooperate with the investigation if their connection to the defendant is made known in advance of trial; and (8) the fact that the intervenors have conceded that they will make the information in the list available to the public. The facts in the record, all relied on by the majority in its analysis of the merits of the defendant's appeal, sufficiently establish a colorable claim that the list of potential witnesses, if revealed to the public, will subject the persons on that list to severe, negative attention that could prejudice the defendant's ability to seek cooperation from them and to gain information vital to establishing his defense.[3]

Finally, although the possibility of harm is necessarily speculative in view of the prospective nature of the allegations, the unique facts of this case give rise to a substantial probability that any harm to the defendant's ability to prepare and present a defense may not be remedied by subsequent appellate review. As the majority aptly explains, "it is difficult to imagine how the court could measure that harm and, if measurable, how

---

[3] Moreover, as the majority notes, what is important to our consideration is not just whether potential witnesses actually will experience negative attention if their identity as witnesses is made known but also whether potential witnesses would fear such attention and decline to cooperate on that basis.

such harm could be remedied. The defendant may never know what information he could have obtained from a reluctant source, and a person who refused to cooperate would seem to be no more likely to do so should a new trial be ordered." The defendant does not have to prove that he necessarily will suffer irreparable harm as a result of the trial court's order; he must only make a colorable claim that he will suffer such harm. See *State* v. *Tate*, supra, 256 Conn. 276–77. Because the defendant has a right to a fair trial, and in light of the unique public attention in this case that may give rise to an incurable public backlash against potential witnesses in such a way that will prejudice the defendant's right to prepare a defense, I would conclude that this case falls within the category of cases in which the rights of the defendant "can be enjoyed only if vindicated prior to trial." *State* v. *Parker*, supra, 194 Conn. 659.

I note that, in reaching this conclusion, I am persuaded largely by the unique and extraordinary negative public attention that this case has received relative to most criminal cases. The defendant has sufficiently established that the negative public attention that has been and will likely be directed at him and those connected to him differs in both kind and degree from that in most other cases. On the basis of the facts in the record, I am led to conclude that the unsealing of the witness list in this case, unlike in most other cases, will likely result in irreparable prejudice to the defendant's right to a fair trial. For these reasons, I find the present case distinguishable from *State* v. *Figueroa*, 22 Conn. App. 73, 77–80, 576 A.2d 553 (1990) (concluding that court lacked jurisdiction to review trial court's order unsealing police report on ground that order did not constitute appealable final judgment), cert. denied, 215 Conn. 814, 576 A.2d 544 (1991).

With respect to the merits of the present case, I agree with the majority's conclusion that the trial court's order vacating the sealing of the witness list must be reversed. In agreeing with the majority's conclusion, I am mindful that the defendant's trial will be public and that the media and the general public will be free to observe and report on the trial, including the identity and testimony of the witnesses who testify.

For the foregoing reasons, I respectfully dissent from the majority opinion insofar as the majority treats the defendant's petition for certification to appeal as a petition for review under § 52-265a and concur in that opinion insofar as the majority reverses the order of the trial court.