******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* HIRAL M. PATEL
(AC 163346)

Sheldon, Keller and Prescott, Js.

*Argued February 3—officially released June 27, 2017*

(Appeal from Superior Court, judicial district of
Litchfield, Danaher, J.)

*Rachel M. Baird*, for the petitioner (American News
and Information Services, Inc.).

*Robert J. Scheinblum*, senior assistant state's attor-
ney, for the respondent (state).

*Opinion*

PRESCOTT, J. In this criminal matter, the petitioner, American News and Information Services, Inc., seeks relief, pursuant to Practice Book § 77-1 and General Statutes § 51-164x (c),[1] from an order of the trial court that, although allowing the petitioner to view certain documents that were marked as exhibits in the underlying murder trial prosecuted by the respondent, the state of Connecticut, against the defendant, Hiram M. Patel,[2] prevented the petitioner from obtaining copies of those exhibits. The petitioner claims that the exhibits at issue are judicial documents to which a presumption of public access attaches, and that the court, in violation of Practice Book § 42-49A,[3] improperly limited the petitioner's access to them without first articulating on the record the overriding interest that the court's order was intended to protect or specifying its findings underlying its order.

The respondent contends that we should dismiss the petition for review because, in its view, there was no court order that limited disclosure of or denied the petitioner access to any exhibits or other materials, and the existence of such an order is a factual predicate necessary to invoke our jurisdiction under § 51-164x. See also Practice Book § 77-1. According to the respondent, the court's order merely placed reasonable restrictions on copying exhibits that, at most, limited the dissemination of those exhibits, which the respondent maintains was a permissible restriction authorized pursuant to Practice Book § 1-11C.[4] The respondent further asserts that such an order was final; see Practice Book § 1-11C (j); and, thus, cannot be challenged in a petition for review.

On the basis of our review of the record, we agree with the petitioner that the court improperly limited the disclosure of judicial documents without adhering to the procedural safeguards required under our rules of practice. Accordingly, we vacate that portion of the court's order preventing the petitioner from obtaining copies of trial exhibits and direct the court to follow the procedures set forth in Practice Book § 42-49A prior to rendering any new order limiting disclosure of exhibits.

The following procedural history is relevant to our consideration of the petitioner's claims. On December 28, 2016, the petitioner submitted a request with the Chief Court Administrator to video record the underlying criminal proceedings. That request was forwarded to the trial court, *Danaher, J.*, which heard arguments on January 4, 2017. Both the defendant and the respondent objected to having the trial proceedings recorded. In response to the petitioner's request, the respondent also filed two motions that asked the court to place restrictions on any audiotaping, videotaping, or photo-

graphing of portions of the criminal trial.

In the first motion, the respondent, citing Practice Book § 1-11C (e), (g) and (i), asked the court to disallow the recording or photographing of the testimony of the victim's mother, the medical examiner, two additional fact witnesses, and of any testimony discussing the decedent's body or photographs thereof. The respondent argued that there were significant safety and privacy concerns warranting its request.

The second motion cited Practice Book § 1-11B (g),[5] and asked the court to disallow any photographing or video recording of an undercover police detective, whom the respondent intended to call as a witness at trial. The respondent argued that because the detective continued to engage in undercover activities, his safety would be seriously compromised by any disclosure of his appearance. The state did not object, however, to any audio recording of the detective's testimony.

After hearing from the parties and the petitioner, the court granted the petitioner's request to video record the trial, subject to written orders issued by the court that required the petitioner to follow certain rules throughout the trial proceedings.[6] The court also granted the respondent's two motions and the additional restrictions requested therein.

On January 25, 2017, the petitioner requested copies of exhibits entered into the record as full exhibits, but the court clerk's office denied the request. In response, the petitioner filed a motion asking the court for clarification of its January 4, 2017 ruling, "related orders," "and such other directive/order/ruling applicable to [the petitioner]'s access to trial exhibits." The petitioner asserted in its motion that the court had directed the clerk's office to deny the petitioner "copies of full exhibits entered in public view while the jury was present and not subject to any sealing order." (Footnote omitted.) The petitioner further noted that such a prohibition on disclosure was not part of the relief granted to the respondent, nor was an order pertaining to exhibits included in the court's January 4, 2017 written orders. The petitioner indicated that it intended to seek review of the court's directive, and asked the court to clarify whether the prohibition on obtaining copies applied (1) to the public or just the petitioner, and (2) to all exhibits submitted during trial or only a subset of trial exhibits.

The court addressed the petitioner's motion during proceedings later in the day on January 25, 2017. The attorney for the petitioner was not present. The court first indicated that, contrary to the petitioner's assertions in the motion to clarify, it had never instructed the clerk's office to deny the petitioner copies of exhibits. The court explained that, because it never issued any order regarding exhibits, the motion to clarify was founded on a faulty premise, and it could not clarify

an order it never issued. The court then stated that "[a]ny exhibit that is a full exhibit is available to any member of the public to view. Any member of the public can come here and look at any exhibit. *There are some exhibits that are subject to an order that they not be videoed and otherwise disseminated, and that includes, for example, I believe, possibly autopsy photographs, some crime scene photographs, photographs of victims, if there were such.*" (Emphasis added.)

The court proceeded to indicate that there was no prohibition on the petitioner seeing any exhibit, "[a]nd, in fact, they can have copies of the exhibits, and they can disseminate the full exhibits *with the exception of those subject to the order.* The problem in effectuating that is that there are some exhibits, like some CDs that might have twenty or thirty photographs in them, some of which are not subject to the *sealing* order but some of which are, and the parties have, to my understanding—I've conveyed this several days ago to the parties that there is this request. I have no problem with it. I acquiesce in it. The parties have been busy and have not had time to go through all of these exhibits and sort out those that are subject to the sealing order, those that are not . . . ."[7] (Emphasis added.) As set forth more fully in part II A of this opinion, we construe the court's decision as an order establishing that, although the public and the petitioner could examine all of the trial exhibits at the clerk's office, a subset of those exhibits, including crime scene and autopsy photographs, could not be copied.

The following day, January 26, 2017, the petitioner filed a second motion for clarification asking the court to explain its January 25, 2017 oral response to the first motion for clarification. After quoting the court's several references to a "sealing" order that instructed that certain exhibits not be "videoed and otherwise disseminated," the petitioner noted that no party had sought to seal any trial exhibits pursuant to Practice Book § 11-20A (c) and (d) (2),[8] and that the court's January 4, 2017 orders only effectuated restrictions on the videotaping of trial proceedings, including limiting the recording of certain witnesses. Because the court's January 25, 2017 ruling nevertheless acknowledged two distinct categories of exhibits—one that included exhibits that could be viewed, copied and disseminated by anyone, and a second that included exhibits that could be viewed at the courthouse but not copied—the petitioner asked the court to produce a list identifying which exhibits were in which category. With respect to the exhibits in the second category, the petitioner indicated that it intended to seek review of the court's ruling in accordance with Practice Book § 77-1. Later that same day, the petitioner asserts, it was provided with a copy of the list of trial exhibits, although nothing on that list indicated which exhibits, if any, were subject to the "sealing" order referenced by the court. To date,

the court has not taken any further action on the petitioner's second motion for clarification.

On January 27, 2017, the petitioner filed this petition for review in which it challenges the court's January 25, 2017 ruling limiting its right to obtain copies of certain exhibits. The petitioner argues that the trial exhibits are all judicial documents and, thus, are presumptively subject to the public's right of access. It claims that the court improperly restricted that access without following procedures in place to protect the interests of the public and the petitioner.[9] See Practice Book § 42-49A.

The respondent filed a response to the petition on January 30, 2017. The respondent asks us to dismiss the petition, arguing that the petitioner has mischaracterized the court's January 25, 2017 response to the motion to clarify either as a sealing order or as an order denying it access to exhibits. The respondent contends that the court never issued an order pursuant to Practice Book § 42-49A that sealed or limited the disclosure of exhibits. Rather, the respondent maintains that the only orders rendered by the court were those issued pursuant to Practice Book § 1-11C, and that the court only limited further dissemination of certain exhibits. According to the respondent, such orders are final and not properly the subject of a petition for review. Alternatively, the respondent asks that, to the extent the record is ambiguous regarding the nature of the court's January 25, 2017 ruling, we should remand the matter to the trial court "for a hearing on [the petitioner]'s claim that it has been denied access to exhibits, so that a factual predicate for such a claim, and any trial court ruling regarding it, may be established." This court heard oral argument on the petition on February 3, 2017.[10]

I

Before turning to the merits of the petition for review, we must first address whether we have jurisdiction over the petition, an issue that was raised and argued by the parties at oral argument. The respondent takes the position that the petition should be dismissed because the court never issued an order denying the petitioner access to exhibits, but only placed restrictions on their dissemination in accordance with Practice Book § 1-11C. We disagree that the court's order was so limited and conclude that the petition properly invokes our jurisdiction under § 51-164x (c).

It is axiomatic that the subject matter jurisdiction of the Appellate Court is governed by statute, and that unless the legislature specifically provides otherwise, our jurisdiction is limited to final judgments of the trial court. *Ruggiero* v. *Fuessenich*, 237 Conn. 339, 344–45, 676 A.2d 1367 (1996); see also General Statutes § 52-263. An example of such a statutory grant of jurisdiction over an otherwise interlocutory ruling is found in § 51-

164x (c), which permits "[a]ny person affected" to obtain expedited review of any court order that "seals or limits the disclosure of any files, affidavits, documents or other material on file with the court or filed in connection with a court proceeding . . . ." General Statutes § 51-164x (c); see also Practice Book § 77-1.

Appellate courts, in applying certain exceptions to our final judgment rule, have stated that a party wishing to invoke our jurisdiction need not conclusively demonstrate the factual predicate necessary to establish jurisdiction, but must set forth only a colorable claim that such a factual basis exist. Even if an appellant ultimately fails to establish those facts on appeal, this court does not lose jurisdiction; the appeal simply fails on its merits.[11] For example, the denial of a motion to intervene is immediately appealable only if the moving party can make a colorable claim of entitlement to intervene as a matter of right. See *Common Condominium Assns., Inc.* v. *Common Associates*, 5 Conn. App. 288, 291, 497 A.2d 780 (1985). If the motion to intervene merely sets forth a colorable claim to intervention as of right, "on appeal the court has jurisdiction to adjudicate both his claim to intervention as a matter of right and to permissive intervention." Id.; see also *State* v. *Crawford*, 257 Conn. 769, 775, 778 A.2d 947 (2001) (denial of motion to dismiss criminal charges immediately appealable if motion raises "colorable claim" of double jeopardy), cert. denied, 534 U.S. 1138, 122 S. Ct. 1086, 151 L. Ed. 2d 985 (2002); *Shay* v. *Rossi*, 253 Conn. 134, 167, 749 A.2d 1147 (2000) (denial of motion to dismiss raising colorable claim of sovereign immunity immediately appealable), overruled in part on other grounds by *Miller* v. *Egan*, 265 Conn. 301, 325, 828 A.2d 549 (2003).

Thus, in order to invoke our jurisdiction under § 51-164x, the factual allegations of the petition need not conclusively establish the existence of a Practice Book § 42-49A order, they must only allege sufficient facts necessary to establish a colorable claim that the court has rendered an order that "seals or limits the disclosure" of some material filed with the court. General Statutes § 51-164x (c). The petitioner does not suggest that the court issued a sealing order, but rather relies on the "limits the disclosure" language of the statute. General Statutes § 51-164x (c). To establish a colorable claim, a party must demonstrate only that there is a possibility, rather than a certainty, that the court's order falls within the confines of the statutory provision. See *State* v. *Tate*, 256 Conn. 262, 276–77, 773 A.2d 308 (2001). If the petition satisfies this threshold inquiry, we have jurisdiction to consider both whether the court's order in fact limited the disclosure of materials as contemplated by § 51-164x and, if so, whether the court abused its discretion in so ordering.

Here, resolution of the jurisdictional dispute turns largely upon whether we construe the court's ruling of

January 25, 2017, as a sua sponte order under Practice Book § 42-49A that limited the disclosure of certain trial exhibits—an order from which a petition for review certainly would lie—or whether the court was merely exercising its authority under Practice Book § 1-11C, which, under the provisions of the rule, would constitute a final, and arguably unreviewable, order on the merits. See Practice Book § 1-11C (j) ("[t]he judicial authority shall articulate the reasons for its decision on whether or not to limit or preclude electronic coverage of a criminal proceeding or trial, *and such decision shall be final*" [emphasis added]); *State* v. *Rupar*, 293 Conn. 489, 496, 978 A.2d 502 (2009) (interpreting identical language in General Statutes § 51-196 [d] that decision of sentence review division "shall be final" as meaning no form of appellate review is available with respect to merits of decision).[12] We do not agree with the respondent that the court's ruling is best characterized as a component of or an addition to its existing order under Practice Book § 1-11C, and conclude that the petitioner has met its burden of establishing a colorable claim that the court's order limited the disclosure of materials presumptively available to the public and, thus, was subject to the procedural requirements of Practice Book § 42-49A.

Practice Book § 1-11C is located in the general provisions section of our rules of practice, among other rules pertaining to the possession of electronic devices in court facilities and media coverage of court proceedings in general. Provisions applicable to all media coverage in the Superior Court are found in Practice Book § 1-10B. Practice Book § 1-11C contains specific provisions governing media coverage of a criminal proceeding. A "criminal proceeding" is defined in the rule as "any hearing or testimony, or any portion thereof, *in open court and on the record,*" except arraignments, which are governed by separate rules set forth in Practice Book § 1-11A.[13] Subsection (a) of § 1-11C provides in relevant part that "the broadcasting, televising, recording or photographing by media *of criminal proceedings and trials* in the [S]uperior [C]ourt shall be allowed *except as hereinafter precluded or limited* . . . ." (Emphasis added.) Thus, by their express terms, the remaining provisions in § 1-11C establish the parameters of the court's authority to permit or limit media coverage of proceedings that occur *in the courtroom.*

Nothing in the provisions of Practice Book § 1-11C addresses a court's authority, outside the confines of the broadcasting, televising, recording, or photographing of courtroom proceedings, to limit access to, or the disclosure of, materials filed or lodged with the court (or the procedures for doing so), including limiting access to materials in the custody of the clerk's office, which, by default, are generally available to the public. Practice Book § 42-49A (a). A contrary conclusion would allow a court to seal or limit the disclosure

of judicial documents that otherwise would be prohibited by Practice Book § 42-49A merely by the happenstance that there was media coverage of the trial and the documents were marked as exhibits.[14]

The absence of any provision in Practice Book § 1-11C regarding access to trial exhibits is important to note because, as we have previously indicated, our rules provide that orders that merely limit media coverage of trial proceedings "shall be final" and, thus, arguably unreviewable. Practice Book § 1-11C (j). Accordingly, it is important to avoid mislabeling an order intended to limit disclosure of materials to the public as merely a limitation on media coverage because to do so would thwart review that the legislature expressly has sanctioned in § 51-164x.

The only reference in Practice Book § 1-11C to exhibits is found in subsection (h), which was not raised by the respondent in its written opposition to the petition, but was raised at oral argument by the court. Subsection (h) provides: "Objection raised during the course of a criminal proceeding or trial to the photographing, videotaping or audio recording of specific aspects of the proceeding or trial, or specific individuals *or exhibits* will be heard and decided by the judicial authority, based on the same standards as set out in subsection (f) of this section used to determine whether to limit or preclude *coverage* based on objections raised before the start of a criminal proceeding or trial." (Emphasis added.) Practice Book § 1-11C (h). Subsection (f) in turn provides: "The judicial authority, in deciding whether to limit or preclude electronic *coverage of a criminal proceeding or trial*, shall consider all rights at issue and shall limit or preclude such coverage only if there exists a compelling reason to do so, there are no reasonable alternatives to such limitation or preclusion, and such limitation or preclusion is no broader than necessary to protect the compelling interest at issue." (Emphasis added.) Practice Book § 1-11C (f).

Placed in context of the overall subject matter of the rule, the reference to exhibits in subsection (h) are clearly and unambiguously directed at instances in which an objection arises during a criminal proceeding regarding the media's photographing or videotaping, or the audio recording of exhibits utilized by the parties during the criminal proceeding. This rule has no bearing on and provides no authority for the court to limit access to exhibits except during criminal proceedings, as that term is narrowly defined in the provision. Rules governing limitations on disclosure are explicitly contained in Practice Book § 42-49A, which imposes certain procedural safeguards and an opportunity for review in accordance with § 51-164x and the procedures contained in Practice Book § 77-1.

It is undisputed that the petitioner was granted the privilege to video record the criminal trial. It is also

undisputed that the respondent, prior to trial, filed motions pursuant to Practice Book § 1-11C, and that the court granted those motions and issued additional restrictions on media coverage in its ruling of January 4, 2017. Nothing in the respondent's motions regarding media coverage or the court's subsequent orders, however, addressed trial exhibits, and, in particular, whether the petitioner was prevented from obtaining copies of the exhibits. The only materials referenced in the motion as likely to be exhibits were autopsy photographs of the victim, and the motion asked only that the court disallow any *broadcasting of testimony* discussing the autopsy, the victim's body or photographs thereof. The parties have not asserted nor does the record disclose that the court entered any additional, related order directed at any exhibits on file with the court, including autopsy or crime scene photographs.

The petition for review does not seek to challenge any of the court's orders related to media coverage in the courtroom. Rather, the petition expressly challenges only the court's January 25, 2017 response to the first motion to clarify, in which the court expressed that certain exhibits were the subject of a "sealing" order and, although they could be viewed at the clerk's office, copies could not be made. Given (1) that § 51-164x permits expedited review of any order that "seals or limits the disclosure of any . . . material on file with the court," (2) that § 51-164x does not define what it means to limit disclosure, and no court has construed that term, (3) that the allegations in the petition, supported by copies of transcripts, indicate that, on January 25, 2017, the court limited the petitioner's ability to obtain copies of exhibits on file with the court, and (4) that the court made several references to a prior "sealing" order, we are convinced that the petitioner has raised a colorable claim sufficient to establish our jurisdiction over the petition. That the petition properly invokes our jurisdiction is further demonstrated in our substantive discussion of the petition, which follows.

II

The petitioner maintains that the court's January 25, 2017 ruling, which effectively disallowed the petitioner from obtaining copies of all trial exhibits, was improper because the court's order limited the disclosure of materials on file with the court without adherence to any of the procedures set forth in Practice Book § 42-49A. For the reasons that follow, we agree.

We note as a starting point of our review that the exact nature of the court's January 25, 2017 ruling is somewhat difficult to categorize. It was not rendered in response to a motion expressly invoking Practice Book § 42-49A, but rather as part of the court's oral ruling on a motion to clarify an order allegedly directing the clerk's office not to allow copies to be made of

trial exhibits. The court, however, disavowed having rendered any such order. The court nevertheless sanctioned, and effectively adopted, the actions of the clerk's office by perpetuating a prohibition on copying certain exhibits, and maintaining that the prohibition was consistent with a prior "sealing" order for which there is no record. In any event, in construing a court's decision, we are concerned with the substance and effect of that decision, rather than with any label attached to the order by the parties or the court. *State* v. *Denya*, 294 Conn. 516, 529, 986 A.2d 260 (2010) ("As a general rule, [orders and] judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the [order or] judgment. . . . The interpretation of [an order or] judgment may involve the circumstances surrounding [its] making . . . . Effect must be given to that which is clearly implied as well as to that which is expressed." [Internal quotation marks omitted.]).

The gravamen of the court's January 25, 2017 ruling was that the petitioner was entitled to view, but not make copies of, certain unspecified trial exhibits in the custody of the court. We therefore must determine (1) whether the prohibition on making copies "limited the disclosure" of those exhibits and, if so, (2) whether the court followed all required procedural safeguards.

A

Section 51-164x (c) permits expedited review of a court order that either "seals or limits the disclosure" of materials filed with the court.[15] The statute's use of the conjunctive signifies that an order limiting disclosure of materials is something distinct from a sealing order. As we have already indicated, however, there is nothing in our statutes, rules of practice or case law that defines what it means to "limit the disclosure" of materials. We nevertheless conclude, for the reasons that follow, that an order that prevents the media or the public from obtaining copies of documentary or photographic trial exhibits, unless otherwise prohibited from disclosure by an existing order or otherwise applicable law, constitutes a limit on disclosure as contemplated by Practice Book § 42-49A and § 51-164x (c).

"Words in a statute must be given their plain and ordinary meaning . . . unless the context indicates that a different meaning was intended. . . . Where a statute does not define a term it is appropriate to look to the common understanding expressed in the law and in dictionaries." (Citation omitted; internal quotation marks omitted.) *State* v. *Vickers*, 260 Conn. 219, 224, 796 A.2d 502 (2002). To "limit" means "to curtail or reduce in quantity or extent." Merriam-Webster's Collegiate Dictionary (10th Ed. 2003). To disclose means to "expose to view" or to "make known or public." Id. Thus, to limit the disclosure of materials means to cur-

tail making those materials known to the public or infringing on the public's access to the materials. This construction comports with our Supreme Court's understanding that the procedural safeguards set forth in Practice Book § 42-49A are intended to codify and protect the public's and the media's common-law right to access to the court, which includes access to documents filed with the court in criminal cases. See *State* v. *Komisarjevsky*, 302 Conn. 162, 174–75, 25 A.3d 613 (2011); see also Practice Book (2003) § 42-49A, commentary.[16] Thus, it follows that a limit on disclosure must be construed as synonymous with, or at least strongly correlative to, a limit on the right to access.

"[N]ot all documents in the court's possession are presumptively open. The presumption of public access applies only to judicial documents and records. . . . Such documents provide a surrogate to assist the public in monitoring the judicial process when it cannot be present. . . . Therefore, when determining whether a document should be open to the public, the threshold question under the common law is whether the document constitutes a judicial document. . . . A judicial document is any document filed that a court reasonably may rely on in support of its adjudicatory function . . . ." (Citation omitted; internal quotation marks omitted.) Id., 176. Because trial exhibits submitted to the court in the course of a criminal action are offered in support of or in opposition to issues relating to substantive rights of the parties, including any determination as to the guilt of the defendant, trial exhibits are unquestionably part of the adjudicative process and, thus, are judicial documents subject to a strong presumption of public access.

Courts in other jurisdictions have acknowledged that the public's common-law right to access to judicial documents includes not only a right of physical inspection and viewing, but also a right to obtain copies. The United States Supreme Court, in discussing the scope of the common-law right of access to judicial documents, stated that "[i]t is clear that the courts of this country recognize a general right to inspect *and copy* public records and documents, including judicial records and documents." (Emphasis added; footnote omitted.) *Nixon* v. *Warner Communications, Inc.*, 435 U.S. 589, 597, 98 S. Ct. 1306, 55 L. Ed. 2d 570 (1978); accord *In re Application of National Broadcasting Co.*, 635 F.2d 945, 952 (2d Cir. 1980) ("there is a presumption in favor of public inspection *and copying* of any item entered into evidence at a public session of a trial" and only "the most extraordinary circumstances [would] justify restrictions on the opportunity of those not physically in attendance at the courtroom to see and hear the evidence, when it is in a form that readily permits sight and sound reproduction" [emphasis added]); *United States* v. *Beckham*, 789 F.2d 401, 414 (6th Cir. 1986) (agreeing with United States Court of Appeals for Sec-

ond Circuit that common-law right to access extends to obtaining copies of trial exhibits); see also 76 C.J.S. Records § 84 (2007), and cases cited therein; *State ex rel. KOIN-TV, Inc.* v. *Olsen*, 300 Or. 392, 405–406, 711 P.2d 966 (1985) (assuming common-law right in Oregon of nonparties to copy exhibits received in a civil trial and discussing history behind common law). The respondent has provided no legal argument or authority that would lead us to conclude that the right of access under Connecticut law is, or should be, more limited in scope.[17]

We are persuaded that any order preventing the public or the media from obtaining copies of exhibits, with the exception of reasonable restrictions as to time, place and procedures, constitutes a limitation on the common-law right to access and a limitation on disclosure. The petitioner had a presumptive right not only to inspect all trial exhibits in the custody of the clerk's office but to obtain copies of those exhibits. The court's January 25, 2017 ruling clearly denied the petitioner the right to obtain copies of trial exhibits and therefore limited the disclosure of those exhibits.[18]

Certainly, the public's right of access is not absolute. "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon* v. *Warner Communications, Inc.*, supra, 435 U.S. 598. In Connecticut, a court has the authority to exercise its discretion, either pursuant to a party's motion or sua sponte, to limit access to judicial documents filed in a criminal matter, including the right to obtain copies of exhibits, provided that it follows the procedures set forth in Practice Book § 42-49A. We thus turn to whether the trial court did so in the present case.

### B

Practice Book § 42-49A provides in relevant part that "(c) . . . the judicial authority may order that files, affidavits, documents, or other materials on file or lodged with the court or in connection with a court proceeding be sealed or their disclosure limited only if the judicial authority concludes that such order is necessary to preserve an interest which is determined to override the public's interest in viewing such materials. The judicial authority shall first consider reasonable alternatives to any such order and any such order shall be no broader than necessary to protect such overriding interest. . . .

"(d) In connection with any order issued pursuant to subsection (c) of this section, the judicial authority shall articulate the overriding interest being protected and shall specify its findings underlying such order and the duration of such order. . . . The time, date, scope and duration of any such order shall be set forth in a

writing signed by the judicial authority which upon issuance the court clerk shall immediately enter in the court file and publish by posting on a bulletin board adjacent to the clerk's office and accessible to the public. The judicial authority shall order that a transcript of its decision be included in the file or prepare a memorandum setting forth the reasons for its order.

"(e) Except as otherwise ordered by the judicial authority, a motion to seal or limit the disclosure of affidavits, documents, or other materials on file or lodged with the court or in connection with a court proceeding shall be calendared so that notice to the public is given of the time and place of the hearing on the motion and to afford the public an opportunity to be heard on the motion under consideration. The notice of the time, date and place of the hearing on the motion shall be posted on a bulletin board adjacent to the clerk's office and accessible to the public. . . ."

In the present case, the court issued its order preventing the petitioner, as well as members of the public, from obtaining copies of certain exhibits in the absence of the petitioner's attorney and without prior notice to the public. See Practice Book § 42-49A (e). Accordingly, neither the petitioner nor interested members of the public were afforded an opportunity to be heard. The court did not articulate what overriding interest it sought to protect by limiting the petitioner's access to copies of exhibits and made no specific findings underlying its order, including listing which exhibits were subject to the order. Because the court clearly failed to follow the procedures set forth in Practice Book § 42-49A, the petitioner is entitled to relief.[19] See *Vargas* v. *Doe*, 96 Conn. App. 399, 412–14, 900 A.2d 525 (vacating order rendered pursuant to Practice Book § 11-20A, the civil counterpart of Practice Book § 42-49A, because court did not follow mandatory procedural requirements), cert. denied, 280 Conn. 923, 908 A.2d 546 (2006).

The petition for review is granted and that portion of the court's January 25, 2017 ruling on the petitioner's motion to clarify indicating that the petitioner is not entitled to obtain copies of trial exhibits is vacated. Any subsequent order limiting the disclosure of materials on file with the court must comply with the requirements of Practice Book § 42-49A.

In this opinion KELLER, J., concurred.

[1] General Statutes § 51-164x provides in relevant part: "(c) Any person affected by a court order that seals or limits the disclosure of any files, affidavits, documents or other material on file with the court or filed in connection with a court proceeding, except (1) any order issued pursuant to section 46b-11 or 54-33c or any other provision of the general statutes under which the court is authorized to seal or limit the disclosure of files, affidavits, documents or materials, whether at a pretrial or trial stage, and (2) any order issued pursuant to a court rule that seals or limits the disclosure of any affidavit in support of an arrest warrant, shall have the right to the review of such order by the filing of a petition for review with the Appellate Court within seventy-two hours from the issuance of such court order.

"(d) The Appellate Court shall provide an expedited hearing on such petitions filed pursuant to subsections (a) and (c) of this section in accordance with such rules as the judges of the Appellate Court may adopt, consistent with the rights of the petitioner and the parties to the case."

Practice Book § 77-1 contains rules and procedures necessary to effectuate the expedited review authorized under § 51-164x. See also Practice Book § 42-49A (g).

[2] As set forth in the respondent's opposition to the petition for review, the defendant allegedly participated in a scheme to steal proceeds of illicit drug sales, in which he and a coconspirator entered the home of the victim drug dealer, bound the victim's mother and shot the victim, killing him. In addition to murder, the defendant was charged with felony murder, home invasion, accessory to first degree burglary, accessory to first degree robbery, conspiracy to commit first degree robbery, conspiracy to commit first degree burglary, and evidence tampering. On February 1, 2017, the jury returned a verdict of guilty on all counts, after which the trial court rendered judgment and sentenced the defendant, whose subsequent appeal to our Supreme Court is pending. See *State* v. *Patel*, appeal docketed, SC 19920 (May 16, 2017).

[3] Practice Book § 42-49A, titled "Sealing or Limiting Disclosure of Documents in Criminal Cases," provides in relevant part: "(a) Except as otherwise provided by law, there shall be a presumption that documents filed with the court shall be available to the public.

"(b) Except as provided in this section and except as otherwise provided by law, including [Practice Book §§] 36-2, 40-29 and 40-40 through 40-43 and General Statutes § 54-33c, the judicial authority shall not order that any files, affidavits, documents, or other materials on file with the court or filed in connection with a court proceeding be sealed or their disclosure limited.

"(c) Upon written motion of the prosecuting authority or of the defendant, or upon its own motion, the judicial authority may order that files, affidavits, documents, or other materials on file or lodged with the court or in connection with a court proceeding be sealed or their disclosure limited only if the judicial authority concludes that such order is necessary to preserve an interest which is determined to override the public's interest in viewing such materials. The judicial authority shall first consider reasonable alternatives to any such order and any such order shall be no broader than necessary to protect such overriding interest. An agreement of the parties to seal or limit the disclosure of documents on file with the court or filed in connection with a court proceeding shall not constitute a sufficient basis for the issuance of such an order.

"(d) In connection with any order issued pursuant to subsection (c) of this section, the judicial authority shall articulate the overriding interest being protected and shall specify its findings underlying such order and the duration of such order. If any finding would reveal information entitled to remain confidential, those findings may be set forth in a sealed portion of the record. The time, date, scope and duration of any such order shall be set forth in a writing signed by the judicial authority which upon issuance the court clerk shall immediately enter in the court file and publish by posting on a bulletin board adjacent to the clerk's office and accessible to the public. The judicial authority shall order that a transcript of its decision be included in the file or prepare a memorandum setting forth the reasons for its order.

"(e) Except as otherwise ordered by the judicial authority, a motion to seal or limit the disclosure of affidavits, documents, or other materials on file or lodged with the court or in connection with a court proceeding shall be calendared so that notice to the public is given of the time and place of the hearing on the motion and to afford the public an opportunity to be heard on the motion under consideration. The notice of the time, date and place of the hearing on the motion shall be posted on a bulletin board adjacent to the clerk's office and accessible to the public. The procedures set forth in Sections 7-4B and 7-4C shall be followed in connection with a motion to file affidavits, documents or other materials under seal or to limit their disclosure. . . ."

[4] Practice Book § 1-11C, titled "Media Coverage of Criminal Proceedings," provides in relevant part: "(a) Except as authorized by Section 1-11A regarding media coverage of arraignments, the broadcasting, televising, recording or photographing by media of criminal proceedings and trials in the superior court shall be allowed except as hereinafter precluded or limited and subject to the limitations set forth in Section 1-10B. . . .

"(c) As used in this rule, the word 'trial' in jury cases shall mean proceed-

ings taking place after the jury has been sworn and in nonjury proceedings commencing with the swearing in of the first witness. 'Criminal proceeding' shall mean any hearing or testimony, or any portion thereof, in open court and on the record except an arraignment subject to Section 1-11A. . . .

"(e) Any party, attorney, witness or other interested person may object in advance of electronic coverage of a criminal proceeding or trial if there exists a substantial reason to believe that such coverage will undermine the legal rights of a party or will significantly compromise the safety of a witness or other person or impact significant privacy concerns. In the event that the media request camera coverage and, to the extent practicable, notice that an objection to the electronic coverage has been filed, the date, time and location of the hearing on such objection shall be posted on the Judicial Branch website. Any person, including the media, whose rights are at issue in considering whether to allow electronic coverage of the proceeding or trial, may participate in the hearing to determine whether to limit or preclude such coverage. When such objection is filed by any party, attorney, witness or other interested person, the burden of proving that electronic coverage of the criminal proceeding or trial should be limited or precluded shall be on the person who filed the objection.

"(f) The judicial authority, in deciding whether to limit or preclude electronic coverage of a criminal proceeding or trial, shall consider all rights at issue and shall limit or preclude such coverage only if there exists a compelling reason to do so, there are no reasonable alternatives to such limitation or preclusion, and such limitation or preclusion is no broader than necessary to protect the compelling interest at issue.

"(g) If the judicial authority has a substantial reason to believe that the electronic coverage of a criminal proceeding or trial will undermine the legal rights of a party or will significantly compromise the safety or privacy concerns of a party, witness or other interested person, and no party, attorney, witness or other interested person has objected to such coverage, the judicial authority shall schedule a hearing to consider limiting or precluding such coverage. To the extent practicable, notice that the judicial authority is considering limiting or precluding electronic coverage of a criminal proceeding or trial, and the date, time and location of the hearing thereon shall be given to the parties and others whose interests may be directly affected by a decision so that they may participate in the hearing and shall be posted on the Judicial Branch website.

"(h) Objection raised during the course of a criminal proceeding or trial to the photographing, videotaping or audio recording of specific aspects of the proceeding or trial, or specific individuals or exhibits will be heard and decided by the judicial authority, based on the same standards as set out in subsection (f) of this section used to determine whether to limit or preclude coverage based on objections raised before the start of a criminal proceeding or trial.

"(i) The judge presiding over the proceeding or trial in his or her discretion, upon the judge's own motion or at the request of a participant, may prohibit the broadcasting, televising, recording or photographing of any participant at the trial. The judge shall give great weight to requests where the protection of the identity of a person is desirable in the interests of justice, such as for the victims of crime, police informants, undercover agents, relocated witnesses, juveniles and individuals in comparable situations. 'Participant' for the purpose of this section shall mean any party, lawyer or witness.

"(j) The judicial authority shall articulate the reasons for its decision on whether or not to limit or preclude electronic coverage of a criminal proceeding or trial, and such decision shall be final. . . ."

[5] The respondent appears inadvertently to have referred to the rule governing media coverage of civil proceedings rather than the corresponding, and nearly identical, provision applicable to criminal proceedings, which is found in Practice Book § 1-11C (i).

[6] Specifically, the court instructed that (1) no recording would take place until after the jury was sworn, (2) the parties, during the course of the trial, should inform the court if they believed any recording would compromise the safety of a witness or undermine a legal right, at which time the court would determine whether to suspend recording, (3) the parties should inform the court at the earliest opportunity if a witness was a victim of crime, a police informant, an undercover agent, a relocated witness, a juvenile, or in any comparable situation, at which point the court would determine whether to suspend recording, (4) recording would be limited to the courtroom, utilizing one camera and one microphone operated by an employee of the petitioner who had read and understood the court's order, (5) the

recording equipment would be located in a designated spot, and would be unobtrusive, operated manually and could not remain in the courtroom in the absence of an operator, (6) no equipment producing distracting sound or light, including an artificial light source, would be permitted, (7) recording would be shut off during recesses, sidebar conferences and whenever the jury was excused, and (8) no broadcasting, televising, recording or photographing of jurors would be permitted.

[7] It is entirely unclear from the record to what order the court was referring when it recalled a "sealing order." Except for the order now on review, neither party has directed us to any order in which the court expressly limited the dissemination of or sealed any trial exhibits.

[8] The petitioner appears to have mistakenly referred to Practice Book § 11-20A, which governs the sealing of files and limiting the disclosure of documents in civil cases. The equivalent rules pertaining to criminal cases are found in Practice Book § 42-49A. See footnote 3 of this opinion.

[9] By way of relief, the petition requested expedited review "and such other relief as this court deems appropriate."

[10] On February 14, 2017, the petitioner filed a motion asking this court to take judicial notice of media coverage by Connecticut Network (CT-N) of the December, 2008 murder trial in *State* v. *Cipriani*, Superior Court, judicial district of Hartford, CR-07-0144338. Specifically, the petitioner referenced the video recording of graphic testimony and exhibits, including photographs of the crime scene and autopsy, which allegedly remains available to the public on CT-N's website. The petitioner argued that the media coverage in *Cipriani* supports its position that crime scene and autopsy testimony and photographs are important elements in the coverage of a murder trial, and that coverage of murder trials is in the public interest. Because this evidence goes to the merits of the court's ruling, and we grant this petition for review on procedural grounds, it is unnecessary for us to take judicial notice of the requested materials. Accordingly, we deny the petitioner's motion to take judicial notice.

[11] The notion that a party need only raise a colorable claim to successfully invoke our jurisdiction is logically consistent with our Supreme Court's opinion in *In re Jose B.*, 303 Conn. 569, 34 A.3d 975 (2012), in which that court attempted to resolve an inconsistency in the way courts handled a party's failure to plead or prove an essential fact necessary to obtain relief in a statutory cause of action; more particularly, whether that failure implicated the court's subject matter jurisdiction or merely went to the legal sufficiency of the pleadings. The court held that "the failure to allege an essential fact under a particular statute goes to the legal sufficiency of the complaint, not to the subject matter jurisdiction of the trial court. . . . This conclusion is consistent with the rule that every presumption is to be indulged in favor of jurisdiction . . . is consistent with the judicial policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his day in court . . . by allowing the litigant, if possible, to amend the complaint to correct the defect . . . and avoids the bizarre result that the failure to prove an essential fact at trial deprives the court of subject matter jurisdiction. . . . Moreover . . . the purported distinction between a tribunal's action [that] exceeds its statutory authority, which we have treated as implicating the tribunal's jurisdiction, and a tribunal's action [that] misconstrues its statutory authority, which we have treated as involving the proper construction of the statute . . . has proven illusory in practice." (Citations omitted; internal quotation marks omitted.) Id., 579–80.

[12] It is not surprising that a ruling regarding media coverage of a criminal trial is not subject to further judicial scrutiny given that, prior to the amendment of Practice Book § 1-11C in 2012, the video recording or broadcasting of such trials was presumptively prohibited unless otherwise permitted at the discretion of the trial court.

[13] Rules governing media coverage of civil matters are found in Practice Book § 1-11B.

[14] We do not share the dissent's concern that by not construing Practice Book § 1-11C to implicitly permit a court to enter an unreviewable, no-copying order that, without prior notice, limits the public's right of access to judicial records, we risk sanctioning an unconstitutional prior restraint.

First, that constitutional doctrine has not been raised or briefed by the parties in conjunction with this petition. Under these circumstances, it seems particularly unwise and unnecessary to wander into that briar patch.

Second, even if we were to consider the issue on its merits, we do not share the dissent's concern. The dissent suggests that the court's no-copying

order must be viewed as a necessary extension of the court's earlier Practice Book § 1-11C ruling because, in the absence of a no-copying order, its initial order permitting—with reasonable limitations—the videotaping of the trial would become an impermissible prior restraint. In other words, the dissent argues that, in order to justify a court's reasonable and narrow limitations on the scope of media coverage during a criminal trial, a court must concomitantly order additional and broader governmental restrictions on the public's rights to access court documents. Such an assertion turns on its head the policy underpinning the prior restraint doctrine because it will result in less speech, not more.

Because the media has no common-law or constitutional right to broadcast, photograph, or videotape this trial, the petitioner's right to do so here is a privilege extended by the court in order to foster the public's greater knowledge of our court system. In extending this privilege, and imposing reasonable limitations on it, the court does not simultaneously place its order in constitutional jeopardy by declining or failing to issue an order that prevents public access to judicial records that members of the public otherwise would presumptively have the right to copy but for the fact that a media organization was granted the privilege to videotape the trial.

Finally, it is important to recognize that the prior restraint doctrine is implicated when the government seeks to prevent the publication of information or materials that are *already in the public domain*. See *In re Brianna B.*, 66 Conn. App. 695, 701, 785 A.2d 1189 (2001). In the present case, the media and public were not in possession of the trial exhibits at issue when the court granted the petitioner permission, pursuant to Practice Book § 1-11C, to videotape, with reasonable limitations, this criminal trial. Accordingly, limitations on disclosure could not amount to a prior restraint. The one case cited by the dissent in support of its position, *Oklahoma Publishing Co.* v. *District Court*, 430 U.S. 308, 97 S. Ct. 1045, L. Ed. 2d 355 (1977), is readily distinguishable from the present case because the plaintiff newspaper in that case was already in possession of the juvenile's name and photograph when the District Court issued its order prohibiting their publication. Id., 309.

We do not mean to suggest that the court is necessarily prevented from simultaneously issuing a no-copying order, pursuant to Practice Book § 42-49A, after it complies with the procedures set forth in that provision, including notice to the public. A decision not to issue such an order, however, does not place its order pursuant to Practice Book § 1-11C in any constitutional jeopardy.

[15] We note that § 51-164x (c) is not the source of a trial court's authority to seal or limit the disclosure of files, affidavits, documents or other materials, but only a statute authorizing appellate review of such orders. The trial court's authority to seal or limit disclosure is inherent although limited by constitutional principles, common law, statutes and our rules of practice. See Practice Book § 42-49A and commentary.

[16] Our Supreme Court has explained that "[p]ublic access to court documents traces its roots back centuries through the common law, stemming from the practice of open trials. . . . In the days before the Norman Conquest, public participation at criminal trials was an inherent part of the court system, as the freemen of the community, who represented the patria, or the country, and were required to attend, were responsible for rendering judgment at trial. . . . Over the centuries, trials remained open, and those not in attendance could be assured that community standards of justice and procedural norms would be enforced by those present. . . . This tradition of open trials made its way to colonial America and evolved into a presumption of public access to court proceedings and records that remains a fundamental part of our judicial system today. . . . The rationale underlying the presumption is straightforward: Public monitoring of the judicial process through open court proceedings and records enhances confidence in the judicial system by ensuring that justice is administered equitably and in accordance with established procedures. . . . [T]he bright light cast upon the judicial process by public observation diminishes the possibilities for injustice, incompetence, perjury and fraud. Furthermore, the very openness of the process should provide the public with a more complete understanding of the judicial system and a better perception of its fairness." (Citations omitted; internal quotation marks omitted.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 292 Conn. 1, 34–35, 970 A.2d 656, cert. denied sub nom. *Bridgeport Roman Catholic Diocesan Corp.* v. *New York Times Co.*, 558 U.S. 991, 130 S. Ct. 500, 175 L. Ed. 2d 348 (2009).

[17] As aptly noted in part I of the dissenting opinion, the notion that the right of disclosure should be construed to include the right to obtain copies

finds additional support in how the term "disclosure" is used in other provisions of our rules of practice. See Practice Book §§ 40-7, 40-11 and 40-26.

[18] To the extent that our conclusion is viewed as surprising to trial courts or raises concerns about its effect on efficiency and workload, such issues are best addressed either by changes to our rules of practice or by the legislature. This majority opinion should not be read as suggesting that courts lack the authority to restrict access to graphic crime scene or autopsy photographs on the basis of a compelling interest but, only that, in doing so, the court must follow procedural safeguards in place to protect the right of the public and the media to access such materials.

[19] Because we grant the petition on procedural grounds, we express no opinion on whether the court's decision to limit the disclosure of autopsy and crime scene photographs as well as other exhibits was justifiable under the particular facts and circumstances of this case.